901 P.2d 481

Jeffrey KEAWE, also known as Derrick Guzman, Petitioner–Appellant,

v.

STATE of Hawai'i, Respondent–Appellee.

No. 17405.

Supreme Court of Hawai'i.

Aug. 1, 1995.

Richard T. Pafundi, on the briefs, Honolulu, for petitioner-appellant.

Patricia A. Loo, Deputy Pros. Atty., on the briefs, City and County of Honolulu, Honolulu, for respondent-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Petitioner–Appellant Jeffrey Keawe appeals from the circuit court's resentencing order. Keawe argues that his amended sentence, after a successful Hawai'i Rules of Penal Procedure (HRPP) Rule 40 challenge, was "an enhancement of [his] original sentence" and therefore violated the double

jeopardy clauses of the Hawai'i and United States Constitutions. For the reasons stated below, we reject Keawe's argument and affirm the circuit court's resentencing order.

## I. FACTS

On September 30, 1987, Keawe was charged with one count of theft in the second degree (Criminal No. 87–1296) in violation of Hawai'i Revised Statutes (HRS) § 708–831 (as amended 1986).[1] See 1986 Haw.Sess. Laws Act 314, § 64 at 624–25. On January 18, 1988, he was charged with two counts of theft in the first degree in violation of HRS § 708–831 (1985)[2] and eleven counts of forgery in the second degree (Criminal No. 88–0060) in violation of HRS § 708–852 (1985).[3] On March 2, 1988, Keawe entered no contest pleas to all of the charges against him in both criminal cases.

On April 6, 1988, the circuit court entered judgments of conviction and sentence in both Criminal Nos. 87–1296 and 88–0060. In the first criminal case, Criminal No. 87–1296, the circuit court sentenced Keawe to incarcera-tion for an extended term of ten years, with a one year and eight month minimum term of imprisonment, and to pay restitution in the amount of $8,000. In the second criminal case, Criminal No. 88–0060, the court sentenced Keawe to incarceration for an extended term of ten years as to each count, to run concurrently with each other, with a three-year minimum term of imprisonment, and to pay restitution in the amount of $10,538. Lastly, the sentences in Criminal Nos. 87–1296 and 88–0060 were to be served concurrently with each other.[4]

On January 26, 1993, Keawe filed a Petition for Post–Conviction Relief under HRPP Rule 40. Keawe argued that the extended term sentence was illegal because the court failed to give him any written notification of the possibility of an extended term as required by HRS § 706–664 (Supp.1992).[5] On May 21, 1993, the court granted Keawe's Rule 40 petition and vacated the sentences in both Criminal Nos. 87–1296 and 88–0060. See State v. Schroeder, 76 Hawai'i 517, 527–28, 880 P.2d 192, 202–03 (1994) and State v. Huelsman, 60 Haw. 71, 76–77, 79–80, 588

1. In 1986, HRS § 708–831 provided in relevant part:

 **Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:
 (a) By obtaining property from the person of another;
 (b) Of property or services the value of which exceed $300;
 . . . .
 (2) Theft in the second degree is a class C felony.
 Section 708–831 has since been amended.

2. HRS § 708–831 provides in relevant part:

 **Theft in the first degree.** (1) A person commits the offense of theft in the first degree if he commits theft:
 (a) By obtaining property from the person of another; [or]
 (b) Of property or services the value of which exceed $200[.]
 . . . .
 (2) Theft in the first degree is a class C felony.

3. HRS § 708–852 provides:

 **Forgery in the second degree.** (1) A person commits the offense of forgery in the second degree if, with intent to defraud, he falsely makes, completes, or alters a written instru- ment, or utters a forged instrument, which is or purports to be, or which is calculated to become or to represent if completed, a deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obli- gation, or status.
 (2) Forgery in the second degree is a class C felony.

4. Keawe and Respondent–Appellee State of Ha- wai'i reached a plea agreement whereby Keawe would waive indictment on some criminal mat- ters and would stipulate to a mandatory mini- mum term of incarceration with a maximum term of five years. However, at the sentencing hearing, the circuit court sua sponte sentenced Keawe, based on the multiplicity of offenses, to an extended term of imprisonment of ten years.

5. HRS § 706–664 provides:

 Hearings to determine the grounds for impos- ing extended terms of imprisonment may be initiated by the prosecutor or by the court on its own motion. *The court shall not impose an extended term unless the ground therefore has been established at a hearing after the convic- tion of the defendant and on written notice to the defendant of the ground proposed.* Subject to the provisions of section 706–604, the defen- dant shall have the right to hear and contro- vert the evidence against him and to offer evidence upon the issue.
 (Emphasis added.)

P.2d 394, 398–400 (1978) ("HRS § 706–664 requires a hearing on notice to the defendant as a prerequisite to imposition of a sentence of imprisonment for an extended term[.]"), *reh'g denied,* 60 Haw. 308, 588 P.2d 407 (1979).

At the July 28, 1993 resentencing hearing, the circuit court resentenced Keawe to a five-year indeterminate term of imprisonment in each criminal case with the terms to run consecutively.[6] In resentencing Keawe, the circuit court stated:

> A very important factor in this Court's consideration in sentencing [Keawe] is his prior convictions. He has a very serious record of prior convictions. According to the presentence report, [Keawe] was convicted on March 11, 1980 in Maui County under Criminal 5800 of one count of Forgery, two counts of Theft in the First Degree, and one count of Credit Card Fraud. And he was put on probation. And then at a later time, that probation was revoked; he was sentenced to prison.

> He was convicted on December 15, 1988 of seven counts of Forgery, one count of Theft in the First Degree, in [Hawai'i] County. In Criminal Number 86–0426, he was convicted again in Maui County under Criminal 88–0090 on October 12, 1988 of 17 counts of Forgery and one count of Theft in the First Degree.

> With a record like that, we now approach sentencing in this case. The Court feels that [Keawe], with a record like that, is a danger to the property of others in the community and should be sentenced to a consecutive term of imprisonment with respect to the two cases.

I understand your argument, [defense counsel], that you feel he's being punished more severely. However, Judge Town sentenced him to extended terms of imprisonment without giving him proper notice, and I [do] not believe that a consecutive term of imprisonment under the circumstances violates his Constitutional rights.

> Accordingly, the court *in Criminal 88–0060* will sentence [Keawe] to be transferred to the custody of the Department of Public Safety for—that is, in Counts I and II—Counts I through [X]III for indeterminate terms of imprisonment not to exceed *five years,* [concurrently with each other] with the [Hawai'i] Paroling Authority to determine the minimum term of imprisonment.

> And the Court will sentence [Keawe] *in Criminal 87–1296* to be transferred to the custody of the Department of Public Safety for an indeterminate term of imprisonment not to exceed *five years,* with the [Hawai'i] Paroling Authority to determine the minimum term of imprisonment with the terms of imprisonment in Criminal 88–0060 to run concurrent[ly] with each other for each count but *consecutive[ly] to the term of imprisonment in Criminal 87–1296.*

> Now, I'll tell you very frankly, I would have considered an extended term of imprisonment. But there were proof problems. The files come from island counties. And although I could take judicial notice of some of the matters in the files, I was concerned that there may be difficulty with one or more elements that have to be established, bearing in mind the files come

---

**6.** In Criminal No. 87–1296, Keawe was convicted of one count of Theft in the Second Degree, a class C felony. In Criminal No. 88–0060, Keawe was convicted of two counts of theft in the first degree, a class C felony, and eleven counts of forgery in the second degree, also a class C felony. The statutorily authorized maximum term of imprisonment for class C felonies is five years. HRS § 706–660 (1985); 1986 Haw.Sess. Laws Act 314, § 38 at 611.

Theft in the first degree was a class C felony until the legislature amended the definition of theft in the first degree which, *inter alia,* upgraded the offense to a class B felony. *See* 1986 Haw.Sess.Laws Act 314, § 64 at 624–25. The

two counts of theft in the first degree in Criminal No. 88–0060 were for crimes committed on or about January 1985 through September 1985, prior to the 1986 legislative amendment, and were therefore class C felonies. The offense of theft in the second degree in Criminal No. 87–1296 was for a crime committed on or about May 25, 1987, post–1986 amendment, when the offense became a class C felony.

Because each offense of which Keawe was convicted in Criminal Nos. 87–1296 and 88–0060 was a class C felony, the court was clearly authorized to impose a maximum five-year term of imprisonment for each offense.

from other island counties and could not be established simply by taking judicial notice of the documents in the files. Otherwise, I would have sentenced him as Judge Town did.

Mr. Keawe has established by his past record that he's not—at least was not an honest person, to make an understatement. Whether or not this trait still exists, I don't know. But under the circumstances, it's reasonable to conclude that he's a real danger to the community. And I think the parole authority should be aware of this Court's opinion that he's a danger to the property of other people in the community.

I think he's still a danger based on his past conduct. And frankly, I'm going to give input to the parole authority as to the opinion of the Court.

(Emphases added.) The court also resentenced Keawe to pay restitution, $8,000 in Criminal No. 87–1296 and $10,538 in Criminal No. 88–0060, and gave Keawe credit for time served.

Keawe thereafter filed a timely appeal from the circuit court's Order of Resentencing.

## II. *STANDARD OF REVIEW*

In reviewing Keawe's appeal, we recognize that a sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera,* 74 Haw. 424, 435, 848 P.2d 376, 381, *reconsideration denied,* 74 Haw. 650, 853 P.2d 542 (1993). The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau* 71 Haw. 218, 227–28, 787 P.2d 682, 688 (1990); *State v. Murray* 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 16 (1979). " 'Generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau,* 71 Haw. at 227–

28, 787 P.2d at 688 (1990) (citation and internal quotation marks omitted)).

Keawe's primary argument that his resentence was an enhanced sentence and therefore in violation of the constitutional protection against double jeopardy is a question of law reviewable under a right/wrong standard. *State v. Baranco,* 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994).

## III. *DISCUSSION*

### A.

Before addressing Keawe's primary argument, we consider whether the sentencing court abused its discretion in resentencing Keawe to consecutive terms of imprisonment. The circuit court's authority to impose consecutive terms of imprisonment is governed by HRS § 706–668.5 (Supp.1992), which provides:

**Multiple sentence of imprisonment.**

(1) If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. *Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively.* Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.

(2) The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, *shall consider the factors set forth in section 706–606.*

(Emphases added and bold in original.)

HRS § 706–606 (Supp.1992) provides:

**Factors to be considered in imposing a sentence.**

The court, in determining the particular sentence to be imposed, shall consider:

(1) The nature and circumstances of the offense and the history and *characteristics* of the defendant;

(2) The need for the sentence imposed:

    (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

    (b) To afford adequate deterrence to criminal conduct;

    (c) To protect the public from further crimes of the defendant; and

    (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(Emphasis added and bold in original.)

In *Gaylord,* we recognized that a sentencing court's discretion is "virtually unfettered," but is limited in at least two respects—one general and the other specific.

    As a general matter, when exercising its broad discretion to impose any particular sentence so as to fit the punishment to the offense as well as the needs of the individual defendant and the community, the sentencing court [is] obligated to consider the HRS § 706–606 "factors" as part of its decision making process. *Valera,* 74 Haw. at 435–36 & n. 8, 848 P.2d at 381 & n. 8; [*State v.*] *Lau,* 73 Haw. [259] at 262, 831 P.2d [523] at 525 [ (1992) ]; *State v. Nunes,* 72 Haw. 521, 524–25 & n. 1, 824 P.2d 837, 839 & n. 1 (1992); *Kumukau,* 71 Haw. at 225 & n. 3, 787 P.2d at 686 & n. 3. But specifically, by the plain language of HRS § 706–668.5(2) ..., the sentencing court [is] obligated to "to consider the factors set forth in [HRS §] 706–606" when determining whether multiple indeterminate prison terms were to run concurrently or consecutively.

*Gaylord,* 78 Hawai'i at 149, 890 P.2d at 1189 (some alterations added).

In the instant case, the sentencing court considered the factors set forth in HRS § 706–606, demonstrating serious concern for Keawe's criminal record and the need to protect the community from further crimes by Keawe. During the July 28, 1993 sentencing hearing, the court noted that Keawe had a "very serious record of prior convictions," which included: (1) convictions in 1980 of forgery (one count), theft (two counts), and credit card fraud (one count), which occurred prior to his April 6, 1988 sentence; and (2) convictions in 1988 of theft (two counts) and forgery (twenty-four counts), which occurred prior to his July 28, 1993 sentence. Accordingly, the court characterized Keawe as "not an honest person," which the court considered an "understatement." Moreover, the court concluded that "[w]ith a record like that, ... [Keawe was still] a danger to the property of others in the community and should be sentenced to a consecutive term of imprisonment[.]" Because the sentencing court seriously considered the factors set forth in HRS § 706–606, it appears that the sentencing court acted well within its discretion in sentencing Keawe to consecutive terms of imprisonment.

■ However, because only the 1980 convictions preceded Keawe's April 6, 1988 sentence, for which he was being resentenced on July 28, 1993, the question arises whether the July 1993 sentencing court abused its discretion in considering post-April 6, 1988 convictions in applying the factors of HRS § 706–606.

■ In *State v. Valera,* 74 Haw. 424, 848 P.2d 376, *reconsideration denied,* 74 Haw. 650, 853 P.2d 542 (1993), we recognized that a sentencing judge should be permitted to consider a wide breadth of information regarding the defendant's background when fashioning a particular sentence to the defendant's case. We stated:

    A sentencing judge generally has "broad discretion in imposing a sentence," *State v. Nunes,* 72 Haw. 521, 524, 824 P.2d 837, 840 (1992), and the sentence thus imposed should be tailored to the particular circumstances of a defendant's case. *State v. Nobriga,* 56 Haw. 75, 83, 527 P.2d 1269, 1274 (1974) (citation omitted). To achieve this end, there is a legitimate need to provide a sentencing judge with complete

information about the defendant. *Id.; see also State v. Murphy*, 59 Haw. 1, 21, 575 P.2d 448, 461 (1978). Indeed, a sentencing judge is required to consider specific statutory factors in determining the sentence to be imposed. *See* HRS § 706–606 (Supp. 1992). *Therefore, the scope of a sentencing judge's inquiry into a defendant's background is very broad and limitations on the kind and/or source of information the court may consider are not lightly imposed. Verdugo v. United States*, 402 F.2d 599, 611 (9th Cir.1968), *cert. denied*, 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970), *and cert. denied*, 402 U.S. 961 [91 S.Ct. 1623, 29 L.Ed.2d 124] (1971). *See also Murphy*, 59 Haw. at 21, 575 P.2d at 461.

*Valera*, at 435–36, 848 P.2d at 381 (emphasis added and footnote omitted).[7] Accordingly, a sentencing court may consider any and all accurate information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed. *See Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949) (observing that "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics").

■ Information relevant to sentencing may include an updated presentence report. "In any system which vests discretion in the sentencing authority, it is necessary that the authority have sufficient and accurate information so that it may rationally exercise its discretion." Commentary to HRS § 706–601 (1985).

·In *State v. Fry*, 61 Haw. 226, 602 P.2d 13 (1979), we recognized that ordering an updated presentence report in a resentencing hearing is within the discretion of the trial judge. In *Fry*, the defendant had been sentenced to prison in 1971 for: (1) five years for one federal firearms violation; and (2) ten and thirty years respectively for two state robbery charges. The state prison sentences were imposed concurrently with the federal sentence; the remainder of the state sentences was suspended. The defendant's federal sentence expired in 1974, and at that time he was released from both state and federal custody. In 1978, nearly seven years after the original state sentences had been imposed, the prosecution filed a motion requesting that the defendant be resentenced to the full sentences for the two state robbery charges, arguing that the original sentencing judge did not possess statutory authority to suspend the remainder of those sentences. The trial court agreed and found the suspension of the state prison sentences illegal and thereafter imposed the full sentence originally given to the defendant for each state robbery charge.

˙On appeal, the defendant complained, *inter alia*, that the sentencing court erred by not ordering an updated presentence report before resentencing him. We noted that the relevant statutory language of HRS § 706–601(2) provides that "[t]he court *may* order a pre-sentence diagnosis in any other case" and reasoned that resentencing proceedings fell within this provision. *Id.* at 232 & n. 16, 602 P.2d at 17 & n. 16 (emphasis in original). In holding that the sentencing court did not abuse its discretion, we pointed out that the defendant suffered no prejudice resulting from the sentencing court's failure to consider the updated report because the report would have included unfavorable information about the defendant, who had been subsequently convicted of and sentenced for two counts of promoting a dangerous drug in 1976. *Id.* at 228 n. 5, 232, 602 P.2d at 15 n. 5, 17.

The North Carolina Court of Appeals also dealt with a similar issue in *State v. Watson*, 65 N.C.App. 411, 309 S.E.2d 2 (1983). In

---

7. In *Valera*, we noted that a sentencing judge's discretion is not without limits and the judge is still required to impose a fair, proper, and just sentence, based upon the crime of which the defendant was convicted. *Id.* at 436, 848 P.2d at 381 (citation omitted). Based in part on this limitation, we held, *inter alia*, that "the use at sentencing of statements previously obtained in violation of a defendant's privilege against self-incrimination violates that defendant's privilege against self-incrimination and right to due process, as guaranteed by the [Hawai'i] Constitution" and that this holding was consistent with federal law. *Id.* at 437–38, 848 P.2d at 382 (citations omitted).

*Watson,* the defendant, then eighteen years of age, was convicted of and sentenced for armed robbery. The North Carolina Court of Appeals originally remanded this case for resentencing because the trial court sentenced the defendant as an adult offender without first finding that he would not benefit from the treatment provided for youthful offenders.

At resentencing, the trial court refused to consider evidence of the defendant's conduct subsequent to the entry of his original sentence. The sentencing court stated, *inter alia:*

> Now, I'm not sitting here as the Board of Parole to recommend commutation of sentence. I'm sitting here on a re-sentencing hearing as to the situation at the time of the original offense.... I'm not here about what has happened to him since then. This is a resentencing hearing based on factors relative to sentencing as they appeared when he was sentenced.
>
> ....
>
> I'm not considering what he's done since he's been in prison or what his correction officials say. Those are matters for the Board of Parole under the law. The only thing before me is whether this sentence at the time, and considering resentence and the factors and things that are relevant to criminal sentences, have been supported by the Judge's action at that time, supported by the evidence before him.

*Id.* at 412, 309 S.E.2d at 3. The defendant thereafter appealed. Remanding this case for resentencing, the North Carolina Court of Appeals stated that fairness to the defendant required that the resentencing court consider "circumstances relevant" to sentencing that were not considered by the original sentencing court. *Id.* at 413, 309 S.E.2d at 3–4. The court further recognized that:

> the [resentencing] judge may find that defendant would benefit from treatment as a committed youth offender ..., or make a "no benefit" finding and impose the same sentence, or lesser sentence, ... if based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Id.* at 414, 309 S.E.2d at 4 (citation and emphases in original omitted).

The authority of a resentencing judge to consider highly relevant information about the defendant's conduct which occurred subsequent to a prior sentencing hearing was also recognized in *People v. Triplett,* 407 Mich. 510, 287 N.W.2d 165 (1980). In *Triplett,* the defendant's original conviction and sentence for second-degree murder in 1971 was vacated in 1972 because of errors in the plea proceeding. The defendant was subsequently tried by a jury, convicted of second-degree murder, and sentenced to life in prison. In 1976, the Michigan Court of Appeals affirmed the conviction but remanded the case for resentencing on the grounds that the trial court failed to affirmatively enunciate reasons for levying a higher sentence than that earlier meted out pursuant to the defendant's plea.

At the resentencing in 1976, the defendant objected to the trial court's reliance on a stale 1972 presentence report because it did not reflect defendant's subsequent prison conduct and alleged progress toward rehabilitation spanning the five years of the defendant's incarceration from 1972 through 1976. Acting without the benefit of an updated presentence report, the trial court resentenced the defendant to a term of forty to sixty years of imprisonment. The defendant thereafter appealed.

On appeal, the Michigan Supreme Court emphasized that "criminal punishment must fit the offender rather than the offense alone and that sound discretion must be exercised in sentencing matters." *Id.* at 513, 287 N.W.2d at 166. The court stated:

> The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to *balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.* While the resources allocated for rehabilitation may be inadequate and some persons question whether rehabilitation can be achieved in the prison setting, this view of sentencing is the present policy of the state. *A judge needs complete*

*information to set a proper individualized sentence.*

*Id.* (citation omitted and some emphasis added). The Michigan Supreme Court further explained:

To effectuate these goals, it is patent that sentencing inquiries must not be undertaken in a vacuum. Rather such inquiries must be guided by complete and detailed information regarding the offender if the sentence prescribed is to fulfill society's dual goal's of rehabilitation and protection. *See Williams,* [337 U.S. at 247, 69 S.Ct. at 1083].

The presentence report is a vital and necessary component of this effort to prescribe informed, individualized punishment in felony matters. *People v. Lee,* 391 Mich. 618, 631–639, 218 N.W.2d 655 (1974). *See generally* Case Note, *Criminal Procedure–Accuracy of Presentence Reports,* 22 Wayne L.Rev. 899 (1976). Indeed, unlike its discretionary predecessor, 1927 P.A. 175, ch. XI, § 14, the present act mandates that "[b]efore sentencing any person charged with a felony, ... the probation officer *shall* inquire into the antecedents, character, and circumstances of such person or persons, and *shall* report thereon in writing to such court or magistrate." (Emphasis supplied.) M.C.L. § 771.14; M.S.A. § 28.1144. *See generally* [*People v.*] *McFarlin,* [389 Mich. 557,] 567–571, 208 N.W.2d 504[, (1973)].

*Triplett,* 407 Mich. at 514, 287 N.W.2d at 166 (emphases in original). Because "[its] case law and statutory pronouncements ... clearly attest to the pivotal significance of both the presentence investigation and report in the development of individualized sentencing determinations," the Michigan Supreme Court held that the defendant's sentence should be set aside and remanded the matter for resentencing before a different judge who was directed to utilize an updated presentence report. *Id.* at 514–15, 287 N.W.2d at 167.[8]

Mindful that the scope of a sentencing judge's inquiry into a defendant's background is very broad and that an updated presentence report containing information about the defendant's conduct which occurred subsequent to an original sentencing hearing is highly relevant to individualizing a particular sentence to a particular defendant, we interpret the plain and unambiguous language of HRS § 706–606.

▮ First, nothing on the face of § 706–606 prohibits the consideration of criminal convictions occurring subsequent to the date of the original sentencing. Second, HRS § 706–606(1) requires, *inter alia,* that the sentencing court consider the "characteristics of the defendant" in determining the particular sentence to be imposed. Clearly, criminal convictions that occurred subsequently to the original illegal sentence are highly relevant to making an accurate assessment of the defendant's present overall personality and character.

Third and most importantly, HRS § 706–606(2) (Supp.1992) requires the sentencing court to consider "the need for the sentence imposed" to give due consideration to the four classic penal objectives—retribution/just punishment, deterrence, incapacitation, and rehabilitation. *Gaylord,* 78 Hawai'i at 149–50, 890 P.2d at 1189–90. Without the highly relevant information of criminal convictions that occurred subsequent to the original illegal sentence, a sentencing court would be unable to determine whether a particular sentence would, *inter alia,* "protect the public from further crimes of the defendant" and "provide the defendant with needed ... correctional treatment." Therefore, based on the plain language of HRS § 706–606, the penal objectives sought to be achieved therein, and because a resentencing judge has discretion to order an updated presentence report, we hold that a sentencing court may properly consider criminal convictions that occurred subsequent to the original illegal sentence when applying the HRS § 706–606 factors on resentencing.

---

8. Although *Triplett* requires that a reasonably updated presentence report be utilized in resentencing proceedings for felonies, we do not recognize such a requirement in this case. *See State v. Fry,* 61 Haw. 226, 602 P.2d 13 (holding that the ordering of an updated presentence report in a resentencing hearing is within the discretion of the trial judge).

Based on Keawe's convictions in 1980 and his post-April 6, 1988 convictions, we believe that it was reasonable for the July 28, 1993 sentencing court to conclude that Keawe "was not an honest person" and that he still posed "a real danger to the community." Accordingly, based on the record on appeal, we hold that the sentencing court did not abuse its discretion when it sentenced Keawe to consecutive terms of imprisonment.

### B.

We now address the issues of whether Keawe's sentence of two five-year indeterminate terms in Criminal Nos. 87–1296 and 88–0060, to be served consecutively, amounts to an enhancement of the original April 6, 1988 sentence and whether Keawe's resentence violates the double jeopardy clauses of the Hawai'i and United States constitutions.[9] Keawe argues that the circuit court altered the original ten year extended terms, which ran concurrently, by ordering the five-year terms to run consecutively, resulting in a ten-year term. Keawe complains that, although he is no longer in prison, these new consecutive five-year terms of imprisonment will have affected his parole status.[10]

### 1.

■ Although Keawe does not discuss HRS § 706–609 in support of his argument, we note that HRS § 706–609 prevents a sentencing court from issuing a more severe sentence after the initial sentence has been set aside upon review.[11] HRS § 706–609 (1985) provides:

> **Resentence for the same offense or for offense based on the same conduct not to be more severe than prior sentence.** When a conviction or sentence is set aside on direct or collateral attack, the court shall not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence.

However, HRS § 706–609 is inapplicable to the instant case because the resentencing court did not impose a more severe "sentence" on Keawe. A sentence is "[t]he judgment formally pronounced *by the court or judge* upon the defendant after his conviction in a criminal prosecution, imposing the punishment to be inflicted, usually in the form of a *fine, incarceration, or probation.*" Black's Law Dictionary 1362 (6th ed. 1990) (emphases added). On the other hand, parole is the "[r]elease from jail, prison, or other confinement after actually serving part of sentence." *Id.* at 1116.

Although paroling is closely related to sentencing, *i.e.*, a defendant cannot be paroled without being first sentenced to imprisonment, the terms "parole" and "sentence" should not be confused with each other. While sentencing is the function of the judiciary, the granting of parole is generally the function of the executive branch of government, *i.e.*, the Hawai'i paroling authority. *See* HRS § 706–605 (Supp.1992) (authorizing a court to sentence a defendant to, *inter alia*,

---

9. Article I, section 10 of the Hawai'i Constitution provides in relevant part: "No person shall ... be subject for the same offense to be twice put in jeopardy[.]" The Fifth Amendment to the United States Constitution provides in pertinent part: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb[.]"

   We note that although the text of Fifth Amendment mentions only harms to "life or limb," it is well settled that the Fifth Amendment covers imprisonment and monetary penalties. *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, —— n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994). The guarantee "represents a fundamental ideal in our constitutional heritage, and ... it should apply to the States through the Fourteenth Amendment." *Id.* (quoting *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969)).

10. Although Keawe claims that the resentencing affected his parole status, he is unsure of the actual effect. On March 8, 1994, Keawe filed a Motion For Leave to Temporarily Remand Case to Circuit Court for Hearing on Impact of July 29, 1993 Circuit Court Orders of Resentencing on Appellant's Parole Status. In his motion, Keawe sought a temporary remand for a hearing with testimony from a representative of the Hawai'i paroling authority to determine whether the new sentence affected his parole status. On March 28, 1994, we denied Keawe's motion.

11. HRS § 706–609 was primarily enacted to protect against situations negatively affecting a defendant's election of his or her right of review. Commentary to HRS § 706–609 (1985).

pay a fine, a term of imprisonment, or probation); HRS § 353–62 (Supp.1992) (authorizing, *inter alia*, the Hawai'i paroling authority to "consider for parole all committed persons, except in cases where the penalty of life imprisonment not subject to parole has been imposed, regardless of the nature of the offense committed").

Therefore, in light of the language of HRS § 706–609 and the clear distinction between sentencing and paroling, we hold that HRS § 706–609 is inapplicable to cases where a new sentence, which is not more severe than a prior sentence, adversely affects a defendant's parole status. Keawe himself readily admits that the "maximum term [of imprisonment] is the same" for both the prior and subsequent sentence received. Accordingly, we hold that Keawe did not receive a more severe "sentence" in violation of HRS § 706–609.

### 2.

■ Because Keawe did not receive a more severe sentence, the dispositive issue on appeal is whether Keawe's new sentence, which may adversely affect his parole status, violates the double jeopardy clause of the Hawai'i and United States Constitutions.

In *Fry*, we disposed of a similar issue on appeal. As discussed *supra* at 486, the defendant in *Fry* had served his original sentences in connection with two state robbery convictions when the trial court declared illegal the suspension of portions of the defendant's full sentences and remanded the case for resentencing. On appeal, we held, *inter alia*, that "[w]here the original punishment was invalid, as here, a correction which produces a valid sentence does not place the defendant in double jeopardy even if that correction increases his punishment." *Fry*, 61 Haw. at 230, 602 P.2d at 16 (citation omitted). Accordingly, under the double jeopardy analysis in *Fry*, even if Keawe's sentence resulted in an increase of his original punishment, it would not violate the double jeopardy clause of the Hawai'i and United States Constitutions.[12] That being the case, it follows *a fortiori*, and we so hold, that Keawe's new sentence does not contravene his right against double jeopardy even if it potentially affects his future eligibility for parole.

### IV.  *CONCLUSION*

For the reasons stated above, we affirm the circuit court's resentencing order.

---

**12.** None of the cases cited in Keawe's brief address the issue of double jeopardy that he raises on appeal. Because the cases fail to support his points of error, they are inapposite. For example, Keawe cites *United States v. Montenegro-Rojo*, 908 F.2d 425 (9th Cir.1990) (holding that reasons for departing from sentencing guidelines must be articulated in the record); *Wong v. Among*, 52 Haw. 420, 477 P.2d 630 (1970) (holding that credit for time served should be given when the former conviction has been set aside by the granting of habeas corpus); *State v. Grahovac*, 52 Haw. 527, 480 P.2d 148 (1971) (holding that credit for time served should be given from invalid commitment to the now valid sentence); *Territory v. Waiamau*, 24 Haw. 247 (1918) (holding credit for time served should also include time served as a "parole prisoner" as parolee is still in custody of the state); *Padilla v. Lynch*, 398 F.2d 481 (9th Cir.1968) (reiterated that parole is a form of custody); and lastly, *Sturm v. California Adult Authority*, 395 F.2d 446 (9th Cir.1967) (where a redetermination of the defendant's sentence to ten and one-half years after prisoner committed prisoner infractions of prison rules, and an increase over the original sentence of six years, held not excessive and not cruel and unusual punishment), *cert. denied*, 397 U.S. 930, 90 S.Ct. 894, 25 L.Ed.2d 110 (1968).