39 P.3d 567

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Richard SAVITZ, Defendant–Appellant,**

and

**Karen Savitz, Defendant.**

No. 23153.

Supreme Court of Hawai'i.

Jan. 29, 2002.

Matthew A. Horn, on the briefs, Honolulu, for defendant-appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, (Scott Miyasato, Law Clerk, with her on the brief), on the briefs, for plaintiff-appellee.

MOON, C.J., NAKAYAMA, and RAMIL, JJ.; With ACOBA, J., Dissenting Separately, and With Whom LEVINSON, J., joins.

Opinion of the Court by RAMIL, J.

Defendant-appellant Richard Savitz appeals the sentencing court's denial of his request for probation with respect to his conviction of promoting a dangerous drug in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1241(1)(a)(i) (Supp.1999). On appeal, Savitz contends that because drug use is not a prerequisite for probation under HRS § 706–659 (Supp.1999), the sentencing court abused its discretion when it denied his request for probation based solely on the fact that he was not a drug user. We hold that HRS § 706–659 does not require "drug use" as a prerequisite to eligibility for probation. In this case, however, because the sentencing court did not predicate its decision exclusively on the fact that Savitz is a drug seller, rather than a drug user, and in light of the absence of strong mitigating circumstances favoring probation, the sentencing court did not abuse its discretion. Accordingly, we affirm the court's sentence.

## I. BACKGROUND

On August 16, 1999, Savitz pled guilty to charges of possession of ammunition by a person convicted of certain crimes (Count I), in violation of HRS § 134–7(b) & (h) (1993), promoting a dangerous drug in the first degree (Count II), in violation of HRS § 712–1241(1)(a)(i), and unlawful use of drug paraphernalia (Count IV), in violation of HRS § 329–43.5(a) (1993).

At Savitz's sentencing hearing on January 18, 2000, the prosecution argued that the court should impose a twenty-year sentence, given that Savitz would not benefit from probation:

We're asking for 20 years ... in Count II.... [I]t seems the only appropriate sentence—given he hasn't benefitted [sic] and continues to commit crime and then sort of gloss over it, sugarcoat it, if you will, and then justify it through his children does not lead the State to believe that he's going to do well if given a chance on probation.

Savitz's counsel responded that, given his old age and poor health, probation would be more appropriate:

Basically, the bottom line, Your Honor, is that we ask for you to give Mr. Savitz a chance on probation for the reason that he is an older person. He recognizes that he's done wrong. He's made a mistake. He's facing a 20–year term of imprisonment at a minimum if he was to violate probation, which for him at his age and health conditions, would be a life sentence. And so there's a[n] extremely powerful motivating factor to do well. He has the support of his children and some other people in the community who he's helped, although that doesn't justify anything he

may have done wrong and the laws he may have broken. He only, I think, offered that as an explanation, not an excuse, for why he's here before the court. He's helped many people over the years, and now there are people that want to help him. We'd ask, Your Honor, that you give him a chance on probation.

Savitz, himself, added, "I'm sorry for what I did. I did a stupid thing, you know. And I just ask you to give me a chance, you know."

The court then sentenced Savitz to concurrent, indeterminate terms of incarceration: Count I for five years; Count II for twenty years; and Count IV for five years. In reaching its decision, the sentencing court considered several factors, including: (1) the availability of probation; (2) the amount of cocaine and its likely use in this case; and (3) sentences given in related cases:

> [W]e're down to three charges that you pled to. And so one of them is a class A felony in which—which, under the law, requires that the court impose a mandatory 20–year jail term. Probation is available for that offense in those situations where the court were—and this is a new option that's available for Count II—where it appears that probation, particularly drug treatment, will have some benefit for that person who is convicted of a class A felony involving drugs. And I looked at that, Mr. Savitz, and I looked at the facts and circumstances in this case, the Pre–Sentence Investigation Report, and unfortunately, you don't fall into that category, persons for whom the probation for the class A felony would be available, the concern I have being that this is a search warrant case.
>
> .... The amount that we're talking about is an extremely large amount of cocaine to have in one's home. It leaves well the inference that it is to be sold rather than to be used.
>
> So you, of course, have acknowledged your ownself [sic] that you are not on drugs. None of your children are. You seem to be a really good father and grandfather and taken really good care of your family. But it appears that your activities have resulted in other people outside of your family having considerable trouble because you're selling drugs to them, and that kind of bothers me. That really bothers me, that you have managed to keep your own family clean, keep yourself clean, but you had 170 plus grams cocaine in your house. You weren't using it. Your family's not using it. Your kids are not using it. Somebody else is, and that makes you real dangerous in my estimation. I do recognize, like you said, you've done some good things for your family. But you sold drugs, looks like. That's what it looks like. It's not good. So even if the option of probation were considered, what we're looking at is for that person who is hopelessly addicted to drugs to be able to get treatment. That's not you either because you're not on drugs. You're just selling them. Appears you have them in your house, and you're selling to other people. And that really bothers me obviously. It really does.
>
> So in any event, I have reviewed this. And have read the letters from your family members and friends, and that's all good. And I think those are things that may have some impact on what the Paroling Authority will intend to do as well as your health considerations as well. But I think considering the kinds of sentences that we're having to impose for drug offenses and the kinds of people that we have come in here on a regular basis, it is really unfair and it would really be inequitable for you, with the facts in this case, to not serve any time at all. We're having to send people away who do considerably less and don't have 170 grams of cocaine sitting around their house.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

"[T]he interpretation of a statute is a question of law reviewable *de novo.*" *State v. Wang,* 91 Hawai'i 140, 141, 981 P.2d 230, 231, *reconsideration denied,* 90 Hawai'i 441, 978 P.2d 879 (1999) (quoting *Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (citations and ellipses omitted)).

## B. *Sentencing*

"[A] sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision." *Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995) (citations omitted). Factors that indicate a "plain and manifest abuse of discretion" are "arbitrary or capricious actions by the judge and a rigid refusal to consider the defendant's contentions." *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 17 (1979). In general, "to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484 (quoting *State v. Gaylord,* 78 Hawai'i 127, 144, 890 P.2d 1167, 1184 (1995) (quotation omitted)) (internal quotation marks omitted).

## III. *DISCUSSION*

Savitz's claim that the sentencing court abused its discretion in denying his request for probation is predicated on two arguments: (1) drug use is not a precondition to qualifying for probation under HRS § 706–659; and (2) the sentencing court, in this case, excluded him from consideration for probation solely because he admitted he was not a drug user.

## A. *Statutory Interpretation*

 HRS § 706–659 prescribes in relevant part:

Notwithstanding part II; sections 706–605, 706–606, 706–606.5, 706–660.1, 706–661, and 706–662; and any other law to the contrary, a person who has been convicted of a class A felony, except class A felonies defined in chapter 712, part IV, *shall* be sentenced to an indeterminate term of imprisonment of twenty years without the possibility of suspension of sentence or probation. . . . A person who has been

convicted of a class A felony defined in chapter 712, part IV,[1] *may* be sentenced to an indeterminate term of imprisonment, except as provided for in section 706–660.1 relating to the use of firearms in certain felony offenses and section 706–606.5 relating to repeat offenders.

(Emphases added.) This court has well-established rules regarding statutory construction:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quotation and internal citation marks omitted). Thus, the use of "may" in the plain language of the statute demonstrates that the sentencing court is given discretion to sentence the defendant to a prison term. Moreover, the legislature's use of the mandatory "shall," rather than the permissive "may," in the same section with regard to *non-drug-related,* class A felonies, supports the statutory reading that grants discretion in situations concerning *drug-related,* class A felonies. *See Gray,* 84 Hawai'i at 149, 931 P.2d at 591. In addition, the statute does not appear to make drug use a prerequisite for consideration of probation. Not only does the statute refrain from expressly requiring it, but the statute's general language referring to all drug offenders ("[a] person who has been convicted of a class A felony defined in chapter 712, part IV") implies that drug sellers are not excluded from such consideration.

 Even if we were to regard the language of HRS § 706–659 as ambiguous, the legislative history not only affirms the sentencing court's wide discretion in granting probation, but also fails to clearly exclude drug sellers from such consideration. *See Kotis,* 91 Hawai'i at 327, 984 P.2d at 86 (describing "the use of legislative history as

---

1. Part IV addresses offenses related to drugs and intoxicating compounds, including HRS § 712– 1241(1)(a)(i).

an interpretive tool") (quotation and internal citation marks omitted). In 1994, the state legislature amended this statute "to allow the court discretion to sentence a defendant convicted of a class A felony drug offense to probation for a period of ten years." Sen. Conf. Comm. Rep. No. 62, in 1994 Senate Journal, at 724. The conference committee report explains that, "in certain instances, the public is better served by allowing judges some discretion in evaluating all *appropriate sentencing and treatment alternatives available for drug offenders.*" Sen. Conf. Comm. Rep. No. 62, in 1994 Senate Journal, at 724 (emphasis added). Similarly, the Senate standing committee highlighted the broad discretion, without a requirement of drug use, given to the sentencing court in granting probation:

> It is not the intent ... to decrease the penalties of any crime or to condone criminal activity, but to award wide discretion to the courts in sentencing defendants. The courts are in the best position to determine what each defendant deserves and *what manner of punishment or rehabilitation to impose.* The courts can still impose the maximum sentence under the law as the minimum sentence the defendant will serve if it deems it necessary.

Sen. Stand. Comm. Rep. No. 832, in 1993 Senate Journal, at 1084 (emphasis added). Thus, Savitz is correct in arguing that the statute does not establish "drug use" as a precondition to probation. The legislative history addresses not only treatment, but also sentencing issues with regard to the court's consideration of probation.[2] Similarly, the debate on the floor of the legislature

fails to demonstrate legislative intent that this statute apply only to drug users. For example, in speaking against the bill, Senator Matsunaga emphasized its application to "Class A drug felons includ[ing] drug traffickers, dealers and those who distribute dangerous drugs to minors." 1994 Senate Journal, at 643. *See also* 1993 House Journal, at 589 (noting application to drug dealers in speaking against this bill) (statement of Rep. Thielen). Absent strong legislative history to the contrary, we follow the plain language of the statute.

■ Nevertheless, the legislative history clarifies that, though the sentencing court has discretion to grant probation to all drug offenders, the legislature was contemplating "strong mitigating circumstances," Sen. Stand. Comm. Rep. No. 832, in 1993 Senate Journal, at 1084, which it viewed as arising in "unusual cases," Sen. Conf. Comm. Rep. No. 62, in 1994 Senate Journal, at 724. Similarly, the House standing committee report recited:

> Given a particular defendant's *unique circumstances and background,* the sentencing judge should be permitted some discretion in evaluating all sentencing alternatives appropriate for those convicted of drug offenses. Your Committee believes that a longer probationary period should be required to ensure the public's best interest, in those *unusual cases* where probation is granted.

Hse. Stand. Comm. Rep. No. 1207, in 1993 House Journal, at 1488 (emphases added). Such "circumstances and background" are the factors enumerated in HRS § 706–621 (1993).[3] Therefore, although "drug use" is

---

2. The prosecution cites a House Standing Committee's Report mentioning "the treatment, monitoring, and control of certain Class A drug offenders in a setting outside of prison" for the proposition that the statute's intended target was specifically drug "users," and not drug "sellers." Answering Brief (AB) at 15 (quoting Hse. Stand. Comm. Rep. No. 1207, in 1993 House Journal, at 1488). Such statement by the House's standing committee, however, does not necessarily exclude drug sellers. As the committee continued, "[g]iven a particular defendant's unique circumstances and background," the sentencing judge may decide that monitoring and control may be more appropriate than time served for a drug seller. Hse. Stand. Comm. Rep. No. 1207, in

1993 House Journal, at 1488. After all, the foremost concern is that the sentencing judge be given the "discretion in evaluating *all* sentencing alternatives appropriate for those convicted of drug offenses," whether as a drug user or a drug seller. *Id.* (emphasis added).

3. HRS § 706–621 provides:

The court, in determining whether to impose a term of probation, shall consider:
(1) The factors set forth in section 706–606 to the extent that they are applicable;
(2) The following factors, to be accorded weight in favor of withholding a sentence of imprisonment:

not a prerequisite to eligibility for probation under HRS § 706–659, the legislature contemplated, consistent with the factors enumerated in HRS § 706–621, that the trial court would grant probation in cases where strong mitigating circumstances favored it.

### B. *Application to This Case*

██ Savitz alleges that the sentencing court abused its discretion by failing to consider him for probation based exclusively on the fact that he was not a drug user. Although the sentencing court may have overemphasized the importance of drug treatment in qualifying for probation, the court did not claim that it was the only relevant factor.[1] Indeed, the sentencing court "looked at the facts and circumstances in this case [and] the Pre–Sentence Investigation Report." Specifically, the court considered the egregiously "large amount of cocaine" involved;[5] the likelihood that Savitz was a drug dealer, who therefore posed a danger to others; and the sentences given to drug offenders "who do considerably less."

██ More importantly, we perceive no "unusual" or "strong mitigating circumstances" in this case. The only reasons Savitz cited in favor of the sentencing court considering probation was his old age and poor health. Though these factors may arguably implicate HRS § 706–621(g) and (h), they do not mandate a probationary sentence.

(a) The defendant's criminal conduct neither caused nor threatened serious harm;
(b) The defendant acted under a strong provocation;
(c) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(d) The victim of the defendant's criminal conduct induced or facilitated its commission;
(e) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime;
(f) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(g) The character and attitudes of the defendant indicate that the defendant is unlikely to commit another crime;
(h) The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program or both;

We hold that the sentencing court acted within its discretion when it denied Savitz's request for probation.

### IV. *CONCLUSION*

Based on the foregoing discussion, we affirm the judgment of the sentencing court.

Dissenting Opinion of ACOBA, J., With Whom LEVINSON, J. Joins.

Because there is no dispute that Hawai'i Revised Statutes (HRS) § 706–659 (Supp. 1999) is not ambiguous or "absurd" in its application, I believe the statute's plain and unambiguous vesting of discretion in the sentencing court to grant probation may not be restricted to cases involving "strong mitigating circumstances." The tenet that the legislative history of HRS § 706–659 requires "strong mitigating circumstances," majority opinion at 444, 39 P.3d at 571, as a prerequisite to the imposition of probation creates a new and, in my view, unauthorized limitation on a judge's consideration of a probationary sentence under that statute. With all due respect, I believe this results from a misapplication of the fundamental rules of statutory construction.

### I.

In pertinent part HRS § 706–659 provides that

(i) The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependants; and
(j) The expedited sentencing program set forth in section 706–606.3, if the defendant has qualified for that sentencing program.

4. The sentencing court stated:

> *Probation is available for that offense* in those situations where the court were—and this is a new option that's available for Count II—*where it appears that probation, particularly drug treatment, will have some benefit for that person who is convicted of a class A felony involving drugs.*
> (Emphases added.)

5. The prosecution points out that Savitz possessed almost six times the amount of cocaine needed to be convicted as a class A offender.

[a] person who has been convicted of a class A felony, except class A felonies defined in chapter 712, part IV [relating to drug offenses and intoxicating compounds] shall be sentenced to an indeterminate term of imprisonment of twenty years without the possibility of ... probation.... *A person who has been convicted of a class A felony defined in chapter 712, part IV, may be sentenced to an indeterminate term of imprisonment except as provided for in section 706-660.1 relating to the use of firearms in certain felony offenses and section 706-606.5 relating to repeat offenders.*

(Emphasis added.) I agree that authorization to impose an indeterminate term of imprisonment under HRS § 706-659 gives a sentencing court discretion to sentence a defendant to probation and that the broad terms of the statute do not limit such dispensation only to "drug users." The judicial guidelines for "determining whether to impose a term of probation" are set forth in HRS § 706-621 (1993).[1] I disagree, however, as to any further ad hoc restriction on the discretion of the court. In my view, HRS § 706-659 is plain and unambiguous on its face: a sentencing court may grant probation following the guidelines in HRS § 706-621, except to defendants who (1) have used firearms in the course of certain crimes under HRS § 660.1 or (2) are repeat offenders as outlined by HRS § 706-606.5. Defendant does not come within either one of these two exceptions and thus is otherwise eligible for probation.

Absent an absurd result, *see State v. Villeza,* 85 Hawai'i 258, 273, 942 P.2d 522, 537 (1997) ("[d]eparture from the literal construction of a statute is justified only when such construction would produce an absurd and unjust result and the literal construction is clearly inconsistent with the purposes and policies of the statute[ ]" (citations omitted)), we must, in construing a statute, " 'give effect to [the] plain and obvious meaning[ ] ' " of its language. *Fragiao v. State,* 95 Hawai'i 9, 18, 18 P.3d 871, 880 (2001) (quoting *State v. Kalama,* 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000)). The majority does not discern any

ambiguity in the terms of HRS § 706-659 or any "absurdity" in applying the statute as written. The prosecution does not contend that HRS § 706-659 is ambiguous or absurd in result. To the contrary, its primary argument is that the statute plainly gives courts the discretion to sentence a class A drug offender to prison. Defendant does not claim that the statute is ambiguous or results in an absurdity.

Under these circumstances, " 'we do not resort to a legislative history to cloud a statutory text that is clear.' " *Kalama,* 94 Hawai'i at 64, 8 P.3d at 1228 (quoting *Ratzlaf v. United States,* 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (citations omitted)). Indeed, this court has gone so far as to announce that " '[e]ven where the Court is convinced in its own mind that the Legislature really meant and intended something not expressed by the phraseology of the Act, it has no authority to depart from the plain meaning of the language used.' " *Id.* (quoting *State v. Dudoit,* 90 Hawai'i 262, 271, 978 P.2d 700, 709 (1999)) (citing *State v. Buch,* 83 Hawai'i 308, 325-26, 926 P.2d 599, 616-17 (1996) (Levinson, J., concurring and dissenting)).

Thus, in the absence of any perceived ambiguity or absurdity, an examination of legislative history for clarification is not called for under basic canons of statutory construction. A contrary approach can only lead, as it does here, to untoward consequences that clash with the legislature's espoused intent and a defendant's reliance on that expression. *See State v. Riveira,* 92 Hawai'i 546, 561, 993 P.2d 580, 595 (App.1999) (Acoba, J., dissenting) ("When faced with interpreting statutes, the courts must be vigilant of the consequences statutes work, whether declared by the legislature or not. It is how the statute would be read by the layperson [that] guides our construction in criminal cases[.]"), *dissenting opinion adopted by State v. Riveira,* 92 Hawai'i 521, 524, 993 P.2d 555, 558 (2000).

## II.

As recounted, the legislature expressly limited the court's power to grant probation

---

1. *See* majority opinion at 444-45 n. 3, 39 P.3d at 571-72 n. 3.

to certain class A drug felons in the two circumstances set forth in HRS § 706–659. *See supra* at 441, 39 P.3d at 568. It plainly did not intend to impose any other qualification on the court's consideration of probation. The maxim of *expressio unius est exclusio alterius* applies. The statute's inclusion of two exceptions to the allowance of probation necessarily means that the legislature purposefully omitted other potential limitations on the court's discretion. *See Black's Law Dictionary* 581 (6th ed. 1990) (defining "expressio unius est exclusio alterius" as "[w]hen certain ... things are specified in a law, ... an intention to exclude all others from its operation may be inferred"); *In re Water Use Permit Applications*, 94 Hawai'i 97, 151, 9 P.3d 409, 463 (2000) (explaining that "where the legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the legislature acts intentionally and purposely in the disparate inclusion or exclusion") (brackets and internal quotation marks omitted)); *Roxas v. Marcos*, 89 Hawai'i 91, 129, 969 P.2d 1209, 1247 (1998) (applying "*expressio unius est exclusio alterius* [which means] the express inclusion of a provision [in a statute] implies the exclusion of another" to determine head of state would have been subject to suit for non-official acts once leadership term ended); *Fought & Co., Inc. v. Steel Eng'g and Erection, Inc.*, 87 Hawai'i 37, 55, 951 P.2d 487, 505 (1998) ("This court has consistently applied the rule of *expressio unius est exclusio alterius*—the express inclusion of a provision of a statute implies the exclusion of another—in interpreting statutes.") (Citing *Keliipuleole v. Wilson*, 85 Hawai'i 217, 227, 941 P.2d 300, 310 (1997).); *State v. Cornelio*, 84 Hawai'i 476, 494 n. 33, 935 P.2d 1021, 1039 n. 33 (1997); *State v. Arceo*, 84 Hawai'i 1, 29 n. 38, 928 P.2d 843, 871 n. 38 (1996); *International Sav. and Loan Ass'n v. Wiig*, 82 Hawai'i 197, 200, 921 P.2d 117, 120 (1996)); *State v. Kaakimaka*, 84 Hawai'i 280, 291, 933 P.2d 617, 628 (1997) (" 'When the legislature expresses things through a list, the court assumes that what is not listed is excluded.' ") (Quoting 2A *Sutherland Statutory Construction* § 47.23, at 216–17 (5th ed. 1992)).).

Obviously, the legislature could have included "strong mitigating circumstances" as a third limitation on the court's exercise of discretion. The fact that it did not do so manifests its intent that it chose not to do so. Because the legislature did not include such a requirement in the statute itself, we should not now create one. Defendant accordingly is entitled to be considered for probation without the "strong mitigating circumstances" qualification.

## III.

It is said in part, that the court did not abuse its discretion because of "the absence of strong mitigating circumstances favoring probation," majority opinion at 441, 39 P.3d at 568, and that Defendant's request for probation based on "his old age and poor health" "d[id] not mandate a probationary sentence." *Id.* at 445, 39 P.3d at 572. But there is no indication that the court applied the "strong mitigating circumstance" standard, nor can it be assumed that it did, inasmuch as this decision had not been rendered. Nor can it be justly said that Defendant failed to satisfy the standard, in the absence of any evidence that he knew it existed. I believe it is with good reason that neither the court nor the parties addressed the sufficiency or insufficiency of evidence relating to such a standard. Under the plain language of HRS § 706–659, the court was not bound by a "strong mitigating circumstances" standard when Defendant was sentenced. Defendant could not have reasonably anticipated from the face of HRS § 706–659 that his appeal from the court's sentence would be rejected for failure to present strong mitigating circumstances in order to qualify for probation at his sentencing hearing. To hold the Defendant to such a showing at his sentencing hearing under these circumstances is a violation of his due process right to fair notice. *See State v. Navor*, 82 Hawai'i 158, 161, 920 P.2d 372, 375 (App.1996) ("The purpose of notice is to ensure that interested parties are apprised of the pendency of any proceeding which is to be accorded finality. Given notice, parties are able to determine how to respond and prepare for the issues involved in the hearing." (Citations and emphasis

omitted.)); *see also State v. Schroeder,* 76 Hawai'i 517, 531, 880 P.2d 192, 207 (1994) (holding that due process requires that a defendant must be provided notice of the intended application of a mandatory minimum term of imprisonment prior to being sentenced to such a term).

## IV.

I must also disagree that the trial court's statements at sentencing were a mere "overemphas[is of] the importance of drug treatment in qualifying for probation[.]" Majority opinion at 445, 39 P.3d at 572. Given a plain examination, the court's language manifests its belief that it *could not* sentence Defendant to probation because drug treatment was not appropriate in his case, *i.e.,* because he was not a drug user:

> And so one of them is a class A felony in which—which, under the law, requires that the court impose a mandatory 20–year jail term. Probation is available for that offense in those situations where the court were—and *this is a new option that's available for Count II—where it appears that probation, particularly drug treatment, will have some benefit for that person who is convicted of a class A felony involving drugs.* And I looked at that, Mr. Savitz, and I looked at the facts and circumstances in this case, the Pre–Sentence Investigation Report, and *unfortunately, you don't fall into that category, persons for whom the probation for the class A felony would be available,* the concern I have being that this is a search warrant case.
>
> . . . .
>
> . . . . *So even if the option of probation were considered, what we're looking at is for that person who is hopelessly addicted to drugs to get treatment.* That's not you either because you're not on drugs. You're just selling them.

(Emphases added.)

Probationary treatment under the statute is not limited to drug *users.* This court has

decided that a misunderstanding of a statute evinced by a sentencing court's statements resulted in an improper sentence.[2] In *State v. Valera,* 74 Haw. 424, 848 P.2d 376 (1993), the question arose as to whether a sentencing judge could consider suppressed statements as well as crimes for which a defendant was acquitted when determining the defendant's sentence. In that case, the defendant was charged with two counts of murder in the second degree but found guilty of two counts of manslaughter. *See id.* at 429 n. 3 & 430, 848 P.2d at 378 n. 3 & 379. The sentencing judge disclosed that "there are [sic] certain evidence, which the jury could not hear but which . . . I cannot dismiss from my mind" and labeled the defendant "an executioner." *Id.* at 430 & 439, 848 P.2d at 379 & 382.

Examining the judge's statements, this court ruled he had inappropriately considered suppressed statements and acquitted charges. *See id.* at 437, 848 P.2d at 382. Despite (1) the fact that the judge had imposed a sentence within the statutory guidelines and (2) the cases holding that a court's "authority . . . to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion," this court held that, inasmuch as the judge relied on inappropriate matters, this court "[could] not find the sentencing judge's statements . . . harmless beyond a reasonable doubt." *Id.* at 440, 848 P.2d at 383.

Similarly, I cannot conclude that the error here was harmless beyond a reasonable doubt. *See State v. Balisbisana,* 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996) (explaining that the "harmless beyond a reasonable doubt" standard requires a "determin[ation] of] whether there is a reasonable possibility that the error complained of might have contributed" to the outcome of the case (citation omitted)). Had the court not believed that its only permissible option was to sentence Defendant to prison because he was not a drug user and, thus, drug treatment would not "benefit" him, it is impossible to deter-

---

**2.** Despite what I believe to be error, I have no doubt that the court acted conscientiously in this

matter.

mine what the outcome of the sentencing hearing would have been.

## V.

For the foregoing reasons, I would vacate the sentence and remand the case for resentencing. *See State v. Perry*, 93 Hawai'i 189, 198 n. 17, 998 P.2d 70, 79 n. 17 (2000) (remanding case "[b]ecause the court believed it had no discretion in choosing the sentence to be imposed other than to sentence Defendant as it did"). I do not doubt the integrity of the judge who sentenced Defendant, but maintaining the appearance of fairness would require reassignment to a new sentencing court. *See State v. Chow*, 77 Hawai'i 241, 251 n. 13, 883 P.2d 663, 673 n. 13 (App.1994) (remanding case to a different judge, not because the appellate court "question[ed] the impartiality of the district court judge who originally sentenced Defendant," but because "the district court judge who originally sentenced Defendant ha[d] already made a sentencing determination" (citation omitted)).