923 P.2d 408

**Talel ALZHARANI, Plaintiff–Appellant,**

v.

**PACIFIC INTERNATIONAL SERVICES CORPORATION dba Dollar Rent–A–Car, Defendant–Appellee,**

**and**

**Does 1–100, Defendants.**

No. 19333.

Supreme Court of Hawai'i.

Sept. 17, 1996.

Charles J. Ferrera, on the briefs, Honolulu, for plaintiff-appellant Talel Alzharani.

Robert P. Richards and L. Darlene Mitchell of Reid, Richards & Miyagi, on the briefs, Honolulu, for defendant-appellee Pacific International Services Corporation, dba Dollar Rent–A–Car.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this declaratory judgment action, plaintiff-appellant Talel Alzharani appeals from the judgment entered in favor of defendant-appellee Pacific International Services Corporation dba Dollar Rent–A–Car (PISC). Alzharani argues on appeal that the circuit court erred in denying his motion for summary judgment and in granting summary judgment in favor of PISC because, as a self-insurer, PISC was statutorily and contractually obligated to offer him uninsured motorist (UM) and underinsured motorist (UIM) coverage at the time he rented a vehicle from PISC. Having failed to do so, Alzharani asserts that PISC is obligated to provide him UM coverage in the present case. For the following reasons, we affirm the judgment and order granting summary judgment in favor of PISC.

## I. BACKGROUND

On September 6, 1992, Alzharani rented a 1992 Pontiac Sunbird automobile [hereinafter, the rental vehicle] from PISC in Honolulu. The rental agreement provided in pertinent part that "[t]his vehicle is provided to the Renter with the minimum insurance required by Hawaii Revised Statutes for Property Damage, Bodily Injury, and No Fault. We do not provide any coverage for uninsured or underinsured motorists."

During the evening of the same day, Alzharani was involved in a three-car accident on Kamehameha Highway in Lāʻie. The two other cars involved in the accident were uninsured. Alzharani incurred medical expenses and suffered lost wages due to the injuries he sustained in the accident. PISC provided no-fault benefits, but refused Alzharani's request for statutory UM benefits.

On October 17, 1994, Alzharani filed a complaint for declaratory relief, seeking a judicial determination of PISC's statutory obligation to provide him with UM benefits. The parties filed cross-motions for summary judgment, and, by order filed September 15, 1995, the circuit court denied Alzharani's motion and granted PISC's motion. Judgment was filed on October 18, 1995, and this timely appeal followed.

## II. STANDARD OF REVIEW

It is well settled that:

We review [a] circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated,

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law.

*Id.* (emphasis added) (citation and internal quotation marks omitted); *see* Hawaiʻi

Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted). *State v. Erkel Greenfield and Assoc.*, 82 Hawai'i 32, 39, 919 P.2d 294, 301 (1996) (quoting *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)).

## III. *DISCUSSION*

Alzharani specifically argues that the circuit court erred in concluding that PISC is not obligated, either by statute or by contract, to offer or provide UM coverage to Alzharani. We disagree.

### A. *General Principles and Statutory Requirements*

It is undisputed that PISC is a self-insurer. Hawai'i Revised Statutes (HRS) § 431:10C–103(19) provides that a "[s]elf-insurer, with respect to any motor vehicle, means a person [1] who has satisfied the requirements of section 431:10C–105." HRS § 431:10C–105 (1987 Spec. Pamphlet) provides:

**Self-insurance.** The motor vehicle insurance required by section 431:10C–104 [2] may be satisfied by any owner of a motor vehicle if:

(1) Such owner provides a surety bond, proof of qualifications as a self-insur-

---

**1.** HRS § 431:10C–103(16) (1993) provides that "[p]erson means, when appropriate to the context, not only individuals, but corporations, firms, associations, and societies."

**2.** HRS § 431:10C–104 (1993) provides in pertinent part:

**Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.

(b) Every owner of a motor vehicle used or operated at any time upon any public street, road or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall

---

er, or other securities affording security substantially equivalent to that afforded under a no-fault policy, providing coverage at all times for the entire motor vehicle registration period, as determined and approved by the commissioner under regulations; and

(2) The commissioner is satisfied that in case of injury, death or property damage, any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle.

Therefore, as a self-insurer, PISC is statutorily obligated to afford "security substantially equivalent to that afforded under a no-fault policy[.]" Pursuant to HRS § 431:10C–103(12) (1993), "no-fault policy" is defined as "an insurance policy which meets the requirements of section 431:10C–301."

HRS § 431:10C–301 (1993) in turn provides in pertinent part:

**Required motor vehicle policy coverage.** (a) In order to meet the requirements of a no-fault policy as provided in this article, an insurance policy covering a motor vehicle shall provide:

(1) *Coverage specified in section 431:10C–304;* [3] *and*

(2) *Insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums*

---

maintain the no-fault policy at all times for the entire motor vehicle registration period.

**3.** HRS § 431:10C–304 (1987 Spec. Pamphlet) provides in pertinent part:

**Obligation to pay no-fault benefits.** Every no-fault and self-insurer shall provide no-fault benefits for accidental harm has follows:

(1) Except as otherwise provided in section 431:10C–305(d):

(A) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the following persons who sustain accidental harm as a result of the operation, maintenance, or use of the vehicle, an amount equal to the no-fault benefits payable to that person as a result of the injury:

which the owner or operator may legally be obligated to pay for injury, death or damage to property of others, except property owned by, being transported by, or in the charge of the insured, which arise out of the ownership, operation, maintenance, or use of the motor vehicle[.]

(b) A motor vehicle insurance policy shall include:

(1) *Liability coverage of not less than $35,000 for all damages arising out of accidental harm* [4] *sustained by any one person* as a result of any one accident applicable to each person sustaining accidental harm arising out of ownership, maintenance, use, loading, or unloading of the insured vehicle;

(2) *Liability coverage of not less than $10,000 for all damages arising out of injury to or destruction of property* including motor vehicles and including the loss of use thereof, but not including property owned by, being transported by, or in the charge of the insured, as a result of any one accident arising out of ownership, maintenance, use, loading or unloading, or [sic] the insured vehicle;

(3) With respect to any motor vehicle registered or principally garaged in this State, *liability coverage* provided therein or supplemental thereto, in limits for bodily injury or death, set forth in section 287–7, under provisions filed with and approved by the commissioner, *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death,* resulting therefrom; *provided, however, that the coverage required under this paragraph shall not be applicable where any named insured in the policy shall reject the coverage in writing.*

(4) Coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles. An insurer may offer the underinsured motorist coverage required by this chapter in the same manner as uninsured motorist coverage; provided that the offer of both shall:

(A) Be conspicuously displayed so as to be readily noticeable by the insured;

(B) Set forth the premium for the coverage adjacent to the offer in a manner that the premium is clearly identifiable with the offer and may be easily subtracted from the total premium to determine the premium payment due in the event the insured elects not to purchase the option; and

(C) Provide for written rejection of the coverage by requiring the insured to affix the insured's signature in a location adjacent to or directly below the offer.

(Emphases added.)

B. *PISC Is Not Required by Statute to Offer UM Coverage to Alzharani.*

1. **PISC Is Bound by All of the Provisions of HRS § 431:10C–301.**

PISC argues that the circuit court properly concluded that PISC was not obligated to

(i) Any person, including the owner, operator, occupant, or user of the insured motor vehicle;
(ii) Any pedestrian (including a bicyclist); or
(iii) Any user or operator of a moped as defined in section 249–1; or
(B) In the case of death of any person listed in item (1)(A), arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the legal representatives of such person who sustains accidental harm as a result of the operation, maintenance or use of the vehicle, for the benefit of the surviving spouse and any dependent, as defined in section 152 of the Internal Revenue Code of 1954, as amended, an amount equal to the no-fault benefits payable to the spouse and dependent as a result of the death of such person, subject to the provisions of section 431:10C–103(10);
Provided that [subparagraphs] (A) and (B) shall not apply in the case of injury to or death of any operator of a motorcycle or motor scooter as defined in section 286–2 arising out of a motor vehicle accident.

4. HRS § 431:10C–103(1) (1993) provides that "[a]ccidental harm means bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person."

offer UM coverage to Alzharani essentially because HRS § 431:10C–301(a), which PISC asserts sets out the minimum requirements for a no-fault policy, does not require the offer of UM coverage. PISC contends that, because subsection (a) of HRS § 431:10C–301 makes specific reference to no-fault policies, while subsection (b) only refers to "motor vehicle insurance polic[ies]," self-insurers need only comply with the requirements of subsection (a).[5] Although we agree with PISC that the circuit court reached the correct result, we disagree with PISC's specific argument for four principal reasons.

First, as previously set forth, HRS § 431:10C–103(12) defines a "no-fault policy" as "an insurance policy which meets the requirements of HRS § 431:10C–301." Contrary to PISC's position, HRS § 431:10C–103(12) does not limit its reference to subsection (a) of HRS § 431:10C–301. A plain reading of HRS § 431:10C–103(12) would indicate that, in order to qualify as a no-fault policy, an insurance policy must comply with all of the provisions of HRS § 431:10C–301.

Second, a reading of the entirety of HRS § 431:10C–301 indicates that subsection (b)—which contains the mandatory offer provisions for UM insurance and of which PISC seeks to preclude application in the present case—is integrally related to subsection (a). Clause (2) of subsection (a) requires that, in order to meet the requirements of a no-fault policy, an insurance policy covering a motor vehicle shall provide "insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others," or, in other words, both personal injury and property damage liability insurance.

Although clause (2) of subsection (a) requires liability insurance, it does not set out the minimum amounts of each type of liability insurance; those requirements are set forth in subsection (b). Most notably with respect to application of the provisions of HRS § 431:10C–301 to self-insurers, who, pursuant to HRS § 431:10C–105, must provide a *specific dollar amount* of security that is "substantially equivalent" to the security afforded under a no-fault policy, the mandate of subsection (a) cannot be effectively discerned without reference to subsection (b). Subsections (a) and (b), therefore, are complementary and intertwined, and both subsections define the minimum requirements of a no-fault policy.

Third, the evolution of HRS § 431:10C–301 indicates that subsections (a) and (b) of the version of HRS § 431:10C–301 applicable at the time of the accident in the present case work together to define the requirements of a no-fault policy. Prior to the comprehensive consolidation and revision of the insurance code performed by the legislature in 1987, the requirements for a no-fault policy were set out in HRS § 294–10 (1985), which provided in pertinent part:

> **Required policy coverage.** (a) In order to be a no-fault policy, an insurance policy covering a motor vehicle shall provide, in addition to the coverage specified in section 294–4, [6] insurance to pay on behalf of

---

**5.** PISC also argues that, because subsection (a) contains specific references to "U-drive motor vehicle[s]" and subsection (b) does not, PISC, a renter of U-drive motor vehicles, should be bound only by the requirements of subsection (a). PISC's argument is without merit. As discussed *infra*, subsections (a) and (b) of HRS § 431:10C–301 are complementary and intertwined.

**6.** HRS § 294–4 (1985), the predecessor to HRS § 431:10C–304, provided in pertinent part:

> **Obligation to pay no-fault benefits.** Every no-fault and self-insurer shall provide no-fault benefits for accidental harm as follows:
> (1) Except as otherwise provided in section 294–5(c):

> (A) In the case of injury arising out of a motor vehicle accident to any person, including the owner, operator, occupant, or user of the insured motor vehicle, or any pedestrian (including a bicyclist), or any user or operator of a moped as defined in section 249–1, but not including any operator of a motorcycle or motor scooter as defined in section 286–2, who sustains accidental harm as a result of the operation, maintenance, or use of the vehicle, the insurer shall pay, without regard to fault, to the person an amount equal to the no-fault benefits payable to the person as a result of the injury; or
> (B) In the case of death arising out of a motor vehicle accident of any person, including the owner, operator, occupant, or user of

the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others, except property owned by, being transported by, or in the charge of the insured, which arise out of the ownership, operation, maintenance, or use of the motor vehicle:

(1) Liability coverage of not less than $35,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm arising out of ownership, maintenance, use, loading, or unloading, of the insured vehicle;

(2) Liability coverage of not less than $10,000 for all damages arising out of injury to or destruction of property including motor vehicles and including the loss of use thereof, but not including property owned by, being transported by, or in the charge of the insured, as a result of any one accident arising out of ownership, maintenance, use, loading, or unloading, of the insured vehicle.

As is evident from the organization of HRS § 294–10, all of the requirements segregated into subsections (a) and (b) of the version of HRS § 431:10C–301 applicable to the accident in question were located in the same subsection, evincing a clear legislative intent that all of the requirements listed constitute the minimum requirements of a no-fault policy.

Subsequently, in 1987, the legislature performed a comprehensive review and recodification of the insurance scheme in Hawai'i. However, many of the changes made, most notably the recodification of the provisions of

HRS § 294–10 into HRS § 431:10C–301, were "housekeeping" changes and were not intended to effect any substantive changes in the scheme. The relevant legislative history notes:

The purpose of this bill is to update and revise Hawaii's insurance laws.

In 1955 [sic 1985], the Hawaii Legislature provided funds to the Insurance Commissioner for a comprehensive review of the State's insurance laws. This bill is part of a triad of insurance legislation being proposed as a result of that review. *This bill consolidates the proposed technical, non-substantive changes to the Hawaii Insurance Code and separates them from the substantive changes which are being proposed in other legislation.* Although they are *substantively insignificant,* these changes will greatly improve the quality of the Code and afford the Hawaii consumer, the insurer, and the regulator much better comprehension of the Code.

Sen.Stand.Comm.Rep. No. 763, in 1987 House Journal, at 1461 (emphases added). The original legislative intent evident in the organization of HRS § 294–10, therefore, was unaffected by the 1987 amendments, and subsections (a) and (b) continued to complement one another.

Fourth, it is well-settled that "this court has used subsequent legislative history or amendments to confirm its interpretation of an earlier statutory provision." *Sol v. AIG Hawai'i Ins. Co.,* 76 Hawai'i 304, 309, 875 P.2d 921, 926, *reconsideration denied,* 76 Hawai'i 353, 877 P.2d 890 (1994); *see also In the Interest of John Doe,* 76 Hawai'i 85, 92 n. 10, 869 P.2d 1304, 1310 n. 10 (1994); *Franks v. City and County of Honolulu,* 74 Haw. 328, 340 n. 6, 843 P.2d 668, 674 n. 6 (1993). In 1992 and 1993, the legislature amended HRS

the insured motor vehicle, or any pedestrian (including a bicyclist), or any user or driver of a moped as defined in section 249–1, but not including any operator of a motorcycle or motor scooter as defined in section 286–2, who sustains accidental harm as a result of the operation, maintenance, or use of the vehicle, the insurer shall pay, without regard to fault, to the legal representative of the

person, for the benefit of the surviving spouse and any dependent, as defined in section 152 of the Internal Revenue Code of 1954, of the person, an amount equal to the no-fault benefits payable to the spouse and dependent as a result of the death of the person, subject, however, to the provisions of section 294–2(10).

§ 431:10C–301(c) and (d) to read in pertinent part:

> (c) The stacking or aggregating of uninsured motorist coverage or underinsured motorist coverage is prohibited, except as provided in subsection (d).
>
> (d) *An insurer shall offer the insured the opportunity to purchase uninsured motorist coverage and underinsured motorist coverage by offering the following options with each no-fault policy:*
>
> > (1) The option to stack uninsured motorist coverage and underinsured motorist coverage; and
> >
> > (2) The option to select uninsured motorist coverage and underinsured motorist coverage, whichever is applicable, up to but not greater than the bodily injury liability coverage limits in the insured's policy.
>
> *These offers are to be made when a no-fault policy is first applied for or issued.* For any existing policies, an insurer shall offer such coverage at the first renewal after January 1, 1993.

(Emphases added.).

In view of the express reference to "no-fault policies" in the subsequent amendments to HRS § 431:10C–301, it is clear that the legislature intended the mandatory offer provisions of subsection (b) to apply to the "no-fault policy" requirements of subsection (a).

■ Based on the foregoing, we hold that the mandatory UM offer requirements of HRS § 431:10C–301(b)(3) apply to the minimum requirements of a "no-fault policy" as specified in HRS § 431:10C–301(a). Moreover, although the facts of the present case indicate that Alzharani principally seeks a judicial determination of PISC's obligation to offer him UM coverage, we take this opportunity to note that, pursuant to the ratio-

nale expressed by this court in *Allstate Insurance Co. v. Hirose,* 77 Hawaiʻi 362, 368, 884 P.2d 1138, 1144 (1994)[7] and *Mollena v. Fireman's Fund Insurance Co. of Hawaii, Inc.,* 72 Haw. 314, 324, 816 P.2d 968, 973 (1991) our holding regarding a self-insurer's statutory obligation under HRS § 431:10C–301(b)(3) to offer UM coverage to its customers applies with equal force to a self-insurer's statutory obligation to offer UIM coverage to its customers pursuant to HRS § 431:10C–301(b)(4).

### 2. As a Self–Insurer, PISC Is Not Required to Offer UM or UIM Coverage to Itself.

■ Alzharani next argues that, because the mandatory UM and UIM offer requirements of HRS § 431:10C–301 apply to the minimum requirements of a no-fault policy, PISC was obligated to offer Alzharani UM and UIM coverage at the time he rented the rental vehicle from PISC. Alzharani's argument, however, is fundamentally flawed for two principal reasons.

First, as a basic proposition, PISC is not an "insurer" as defined by HRS § 431:10C–103(5), and the vehicle rental agreement is not a contract of insurance. As we recently noted in *Budget Rent–A–Car v. Coffin,* 82 Hawaiʻi 351, 922 P.2d 964 (1996),

> HRS § 431:10C–103(5) defines "insurer" as "every person holding a valid certificate of authority to engage in the business of making contracts of motor vehicle insurance in this State." *[The car rental company] however, is not "in the business of making contracts of motor vehicle insurance"; to the contrary, [the car rental company] is merely the "owner" of several motor vehicles that it permits others to use*

---

7. In *Hirose,* we noted that:

Based on *Mollena,* we must read HRS § 431:10C–301(b)(3) and (b)(4) in conjunction with each other when construing the various subsections of the statute. In so doing, we reach the same conclusion as we did in *Mollena* that the UM and UIM provisions in subsections (b)(3) and (b)(4) are also interrelated and overlapping. For example, we note that under the UIM provision, subsection (b)(4) states that UIM may be offered in the same manner as UM "provided that such offer of *both* shall" comply with subsections (b)(4)(A), (B), and (C).

We further note that subsection (b)(3) of the UM provision refers to the requirement that rejection of UM coverage by the insured must be in writing, while subsection (b)(4)(C) reiterates the identical requirement of written rejection of UIM coverage. Whether the overlapping was "intentional" or coincidental, *it confirms the legislative intent that both coverages be treated alike and that the subsections be read in conjunction with each other.* 77 Hawaiʻi at 369, 884 P.2d at 1142 (emphasis added).

*for a fee. To hold otherwise would effectively render all car rental companies doing business in Hawai'i "insurers," regardless of whether they are self-insurers or not, generally subjecting them to the requirements of HRS chapter 431, and to the regulatory control of the insurance commissioner and the Department of Commerce and Consumer Affairs.*

With respect to this distinction ... any car rental company ... bestows permission to use a rental vehicle upon its customers, albeit for a fee, and dictates the scope of the renter's permissive use by its contract with its customers. In other words, *the rental agreement is not a contract of insurance, and is not the source of the customer's entitlement to insurance coverage;* the customer is statutorily entitled to the minimum motor vehicle insurance coverage required by HRS § 431:10C–301. In this light, ... the rental agreement does not independently confer any insurance coverage ... and ... the rental company is not an "insurer" as defined by HRS § 431:10C–103(5).

*Id.,* at 356–57, 922 P.2d at 969–70 (emphasis added) (footnotes omitted). PISC, therefore, is not subject to the provisions of HRS § 431:10C–301(b)(3) and (4) that require *insurers* to offer UM coverage to parties with which it enters into contracts of *insurance.*[8]

Second, as we also noted in *Coffin,* "all putative insureds who ... operate motor vehicles pursuant to a car rental contract ... gain entitlement to a potential for insurance coverage applicable to the rental vehicle as *permissive users." Id.,* at 356, 922 P.2d at 969 (emphasis added). Alzharani's position, taken to the extreme in the permissive use context, would effectively require all insurers of motor vehicles covered by no-fault insurance policies that are lent to other drivers to offer UM and UIM coverage to the permissive user. We decline to adopt Alzharani's position and hold that PISC is not required to provide UM or UIM benefits to Alzharani.

In view of our holdings, we need not reach Alzharani's additional arguments that: (1) because PISC was obligated to offer him UM coverage and did not, UM coverage automatically applies pursuant to our decision in *Mollena;* and (2) the circuit court erroneously dismissed his claims based on breach of the duty of good faith and fair dealing inherent in all contracts of insurance.[9]

## IV. *CONCLUSION*

Based on the foregoing, the judgment and orders of the circuit court are affirmed.

---

8. From this perspective, Alzharani's citations to cases from other jurisdictions, purportedly holding that self-insurers are obligated to offer UM coverage, are of little support to his position because they are based on statutory mandatory motor vehicle insurance schemes different from Hawai'i's mandatory motor vehicle insurance scheme. In *Akers v. Avis Rent–A–Car,* 587 So.2d 831 (La.Ct.App.1991), *writ denied,* 592 So.2d 1299 (La.1992), Louisiana's UM insurance statute specifically requires that an automobile leasing company give to its lessees the opportunity in writing to accept UM coverage or to reject such coverage and select lower limits; if the company fails to give this option, the policy will be reformed to provide UM coverage equal to the amount of liability coverage provided. Similarly, in *Van Vonno v. Hertz Corp.,* 120 Wash.2d 416, 841 P.2d 1244 (1992), Oregon Revised Statutes § 806.010(1) requires a self-insurer to pay the amount an insurer would be obligated to pay under an insurance policy, specifically including UM coverage of $25,000 per person and $50,000 per accident. Finally, in *Passamano v. Travelers*

*Indemnity Co.,* 882 P.2d 1312 (Colo.1994), because Colorado's insurance statute defined "insurer" as "every person engaged as principal, indemnitor, surety, or contractor in the business of making contracts of insurance," the Colorado Supreme Court treated automobile rental agreements as contracts of insurance, to which Colorado's mandatory UM offer provisions applied, thereby obligating automobile rental companies to offer UM coverage to their customers.

9. We do note, however, relative to Alzharani's bad faith claim, that this court recently expressly acknowledged that an independent cause of action exists in Hawai'i for the breach of an insurer's duty to act in good faith in both first- and third-party contracts of insurance. *See The Best Place, Inc. v. Penn America Insurance Co.,* 82 Hawai'i 120, 132, 920 P.2d 334, 346 (1996), ("[T]here is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action.")