981 P.2d 230

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Joo Ho WANG, Defendant–Appellant.**

No. 21387.

Supreme Court of Hawai'i.

May 20, 1999.

Reconsideration Denied June 18, 1999.

Deborah L. Kim, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Andrea T.Y. Low, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

Defendant-appellant Joo Ho Wang appeals from his conviction of driving without no-fault insurance in violation of Hawai'i Revised Statutes (HRS) § 431:10C–104 (1993).[1] Wang contends that he should have been afforded amnesty under HRS § 431:10C–104.5 (Supp.1997). We agree and reverse.

## I. BACKGROUND

The facts of this case are undisputed. On August 9, 1997, Wang was cited for driving without valid no-fault insurance. On August 19, 1997, Wang obtained valid no-fault insurance. Wang entered a plea of not guilty at arraignment, on September 10, 1997, and the court referred him to the Office of the Public Defender. The matter came on for hearing on December 19, 1997, but was continued.

Immediately prior to trial, on January 21, 1998, Wang moved to dismiss the charges on the basis of statutory amnesty. The district court, however, denied the motion, stating that the statute did not apply to cases that had "already been initiated." Relying upon

---

1. HRS § 431:10C–104 provides:

   **Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.

   (b) Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

   (c) Any person who violates the provisions of this section shall be subject to the provisions of section 431:10C–117(a).

   . . . .

   Section 431:10C–104 was amended, effective January 1, 1998, to replace the term "no-fault policy" with "motor vehicle insurance policy." See HRS § 431:10C–104 (Supp.1998).

its interpretation of the legislative history of HRS § 431:10C–104.5 (Supp.1997), the district court explained that the purpose behind the amnesty provision was to prevent insurance companies from raising rates. The district court adopted the prosecution's position that Section 431:10C–104.5, which became effective on January 1, 1998, did not apply retroactively and was, therefore, inapplicable to Wang's case because he was indicted and arraigned before the statute's effective date. Wang thereafter entered a conditional plea of no contest. He also moved to stay the execution of his sentence pending the outcome of his appeal.[2] Wang timely appealed.

## II. *STANDARD OF REVIEW*

"[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

*Gray v. Administrative Dir. of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Davia,* 87 Hawai'i 249, 254, 953 P.2d 1347, 1352 (1998) (quoting *Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan,* 87 Hawai'i 217, 229–230, 953 P.2d 1315, 1327 (1998) (citation omitted)); *see also Bowers v. Alamo Rent–A–Car, Inc.,* 88 Hawai'i 274, 277, 965 P.2d 1274, 1277 (1998) (citing *Mathewson v. Aloha Airlines, Inc.,* 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (citation and internal quotation marks omitted) (brackets added)). Moreover, remedial statues are "to be construed liberally in order to accomplish the purpose for which [they were] enacted." *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 123, 883 P.2d 38, 44, *reconsideration denied,* 77 Hawai'i 489, 889 P.2d 66 (1994).

## III. *DISCUSSION*

Wang contends that the district court reversibly erred in concluding that the amnesty

**2.** Because this is Wang's second offense, he is subject to a fifteen hundred dollar fine and to a

one-year license suspension.

statute should not be given retrospective application. The prosecution counters (1) that the amnesty statute does not apply to quasi-criminal penalties imposed by the State of Hawai'i, but rather applies to penalties and surcharges imposed by insurance companies, and (2) that, because HRS § 431:10C–104.5 fails expressly to provide for retrospective application, it does not apply retrospectively. For the following reasons, we agree with Wang.

A. *The Statutory Amnesty of HRS § 431:10C–104.5 Applies to Penalties Imposed under HRS §§ 431:10C–104 and 431:10C–117.*

█ Wang was charged under HRS § 431:10C–104, which is a civil statute that penalizes persons driving a motor vehicle without valid no-fault insurance. Pursuant to HRS § 431:10C–104, Wang was subject to HRS § 431:10C–117(a) (1993), which provides:

**Penalties.** (a)(1) Any person subject to this article in the capacity of the operator, owner, or registrant of a motor vehicle in this State, or registered in this State, who violates any applicable provision of this article, shall be subject to citation for the violation by any county police department in a form and manner approved by the violations bureau of the district court of the first circuit.

(2) Notwithstanding any provision of the Hawai['J]i Penal Code:

. . . .

(B) If the person is convicted of not having had a no-fault policy in effect at the time the citation was issued, the fine shall be $500 for the first offense and *a minimum of $1,500 for each subsequent offense;* provided that the judge shall have the discretion to suspend the fine for the first offense; provided further that upon the defendant's request, the judge may grant community ser-

vice in lieu of the fine, of not less than 75 hours and not more than 100 hours for the first offense, and not less than 200 hours nor more than 275 hours for the second offense; and provided further that the judge may grant community service in lieu of the fine for subsequent offenses at the judge's discretion.

(3) In addition to the fine in [paragraph (2)], if any person operates a motor vehicle without a valid no-fault policy in effect insuring the driver or registered owner, or both, either the driver's license of the driver and of the registered owner shall be suspended for three months or they shall be required to maintain proof of financial responsibility pursuant to section 287–21(2), (3), or (4) and keep a nonrefundable no-fault insurance policy in force for six months; *provided that if the violation is a subsequent offense of driving without a valid no-fault policy, the driver's licenses of the driver and the registered owner shall be suspended for one year . . . .*

(Emphases added.) (Some brackets added and some in original.)

HRS § 431:10C–104.5 (Supp.1997)[3] provides:

**Amnesty period for uninsured motorists.** Notwithstanding any other provision of law to the contrary, *any penalties* and any provision for surcharge *based on prior failure, since January 1, 1996, to maintain no-fault insurance* or suspension or revocation of license due solely to failure to maintain no-fault or motor vehicle insurance shall not apply to any uninsured motorist who *obtains the required coverages prior to December 31, 1997.*

(Emphases added.)

The plain language of HRS § 431:10C–104.5 provides amnesty for "any penalties and any provision for surcharge" based upon

---

**3.** HRS § 431:10C–104.5 (Supp.1992 & 1993) provided an amnesty period for uninsured drivers who obtained "the required coverages prior to December 31, 1992." The 1997 enactment changed the relevant time period, running from January 1, 1996 to December 31, 1997. *See*

HRS § 431:10C–104.5 (Supp.1997). Thus, there was a time period when no amnesty existed. Section 431:10C–104.5 was amended again in 1998 to extend the amnesty provision to December 31, 1998. *See* HRS § 431:10C–104.5 (Supp. 1998).

driving without valid no-fault insurance after January 1, 1996, if the person obtains valid no-fault insurance prior to December 31, 1997. Here, Wang was cited on August 9, 1997. He obtained valid no-fault insurance on August 19, 1997. Wang falls squarely within the time period delineated by Section 431:10C–104.5. Therefore, Wang should have been afforded amnesty under the statute.

The prosecution argues, however, that the purpose of HRS § 431:10C–104.5, as gleaned from the legislative history, was to reduce insurance premiums and not to reward uninsured drivers. HRS § 431:10C–104.5 was first enacted in 1992. In relevant part, the legislative history to the 1992 enactment provided:

> The purpose of this bill is to reduce and stabilize the cost of motor vehicle insurance in Hawaii.
>
> . . . .
>
> This bill amended the law in the following areas:
>
> . . . .
>
> (5) An amnesty period for uninsured motorists so that they may obtain insurance without a penalty or surcharge *in order to encourage voluntary compliance with the law yet maintain insurance affordability by suspending penalties and surcharges.* This will *encourage uninsured motorists to obtain coverage,* thus lowering the number of uninsured motorists in Hawaii . . . .

Hse. Conf. Comm. Rep. No. 150, in 1992 House Journal, at 878 (emphases added). Section 431:10C–104.5 was amended in 1997

to change the amnesty period. The legislative history to the 1997 enactment provided:

> The purpose of this bill is to reduce no-fault insurance premiums and to preserve adequate protection of the rights of drivers.
>
> . . . .
>
> Your Committee has also made numerous technical and minor amendments as follows:
>
> . . . .
>
> (3) Provides an amnesty opportunity for those who have been uninsured to buy insurance without penalty . . . .

Hse. Conf. Comm. Rep. No. 171, in 1997 House Journal at 1113–15.[4] It is therefore manifest, despite the prosecution's contention, that the legislative history to HRS § 431:10C–104.5 does not reflect an intent to limit amnesty to penalties imposed by insurers.[5] Therefore, the plain language of HRS § 431:10C–104.5, which provides for amnesty for *any* penalties, applies to penalties imposed pursuant to HRS §§ 431:10C–104 and 431:10C–117.

> B. *The Plain Language of HRS § 431:10C–104.5 Provides for Retrospective Application.*

■ In *Government Employees Ins. Co. v. Hyman,* 90 Hawaiʻi 1, 5, 975 P.2d 211, 215 (1999), we recently explained:

> HRS § 1–3 (1993) provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." Also, this court has noted the "general rule in most jurisdictions that [s]tatutes or regulations which say

**4.** Although we are not bound by future amendments, *see Bowers,* 88 Hawaiʻi at 281, 965 P.2d at 1281–82 (refusing to retrospectively apply a nonretroactive statute), " 'subsequent history or amendments' may be examined in order to confirm our interpretation of statutory provisions." *See id.* at 282, 965 P.2d at 1282 (Ramil J., concurring) (citations omitted); *see also Alzharani v. Pacific Int'l Services Corp.,* 82 Hawaiʻi 466, 471–72, 923 P.2d 408, 413–14 (1996) ("It is well-settled that 'this court has used subsequent legislative history or amendments to confirm its interpretation of an earlier statutory provision.' ").

HRS § 431:10C–104.5 was amended, again, in 1998. The legislative history provides in part:

In summary, H.B. No. 2823, H.D. 1, S.D. 1, C.D. 1 contains the following amendments:

. . . .

(3) The amnesty period for uninsured drivers is corrected to give these drivers an opportunity to take advantage of lower insurance rates and purchase insurance to comply with the law[.]

Hse. Conf. Comm. Rep. No. 117, in 1998 House Journal, at 999.

**5.** In fact, the prosecution's interpretation would contravene the purpose of the statute "to encourage voluntary compliance with the law yet maintain insurance affordability by suspending penalties and surcharges."

nothing about retroactive application are not applied [to prior claims or events] if such a construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions." *Clark v. Cassidy,* 64 Haw. 74, 77 n. 6, 636 P.2d 1344, n. 6 (1981).

*Wong v. Takeuchi,* 88 Hawai'i 46, 51, 961 P.2d 611, 616 (1998) (citing *State of Hawai'i Org. of Police Officers v. Society of Professional Journalists,* 83 Hawai'i 378, 389, 927 P.2d 386, 397 (1996)) (Some brackets added.). Nevertheless, under an equally established rule of construction, a statute providing remedies or procedures that do not affect existing rights, but merely alter the means of enforcing or giving effect to such rights, may apply to pending claims—even those arising before the effective date of the statute. *See Clark,* 64 Haw. at 77, 636 P.2d at 1347 (citations omitted). *See also Landgraf v. USI Film Products,* 511 U.S. 244, 273 [114 S.Ct. 1483, 128 L.Ed.2d 229] (1994) ("Although we have long embraced a presumption against statutory retroactivity, for just as long we have recognized that, in many situations, a court should 'apply the law in effect at the time it renders its decision.'") (Citing *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974)).

*These judicial principles of construction, however, do not apply if the legislature expressly limits the temporal scope of the statute.* As the United States Supreme Court stated in *Landgraf:*

When a case implicates a federal statute enacted after the events in suit, *the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules.* When, however, the statute contains no such express command, the court must deter-

mine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280 [114 S.Ct. 1483] (emphasis added). *See also Lockheed Corp. v. Spink,* 517 U.S. 882, 896–97, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (*"Where, as here, the temporal effect of a statute is manifest on its face, there is no need to resort to judicial default rules, and inquiry is at an end."*) (Citation and internal quotation marks omitted.)

(Some emphasis added and some in original.) (Footnote omitted.) *See also State v. Von Geldern,* 64 Haw. 210, 213, 638 P.2d 319, 322 (1981) (looking to legislative intent to determine whether statute applies retrospectively).

The plain language and the apparent legislative intent underlying HRS § 431:10C–104.5 provide amnesty for persons who have been cited for driving without valid no-fault insurance, but who have obtained valid no-fault insurance, within the relevant time period, *i.e.,* January 1, 1996 to December 31, 1997. Although the effective date of Section 431:10C–104.5 was January 31, 1998, the statute must apply retroactively, or its enactment would be nugatory.[6] As the prosecution has repeatedly noted, "the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." *Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (citing *State v. Griffin,* 83 Hawai'i 105, 108 n. 4, 924 P.2d 1211, 1214 n. 4 (1996) (quoting *State v. Malufau,* 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995) (citations and

---

**6.** As Wang noted in his opening brief, if Section 431:10C–104.5 did not operate retrospectively, the amnesty provision would, in actuality, only apply to persons who had moved for continuance of their arraignment until after January 1, 1998 or who have been cited in December 1997. Considering the plain language of the statute, this cannot be what the legislature intended.

internal quotation marks omitted)) (brackets and internal quotation marks omitted); HRS § 1–15(3) (1993) ("Every construction which leads to an absurdity shall be rejected.")). Accordingly, we hold that the plain language and the legislative intent underlying HRS § 431:10C–104.5 provide for its retrospective application.

## IV. *CONCLUSION*

Based upon the foregoing, we reverse the judgment and conviction entered on January 21, 1998.