**Electronically Filed
Supreme Court
SCWC-23-0000296
13-AUG-2025
09:29 AM
Dkt. 17 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

STATE OF HAWAI‘I,
Respondent/Plaintiff-Appellee,

vs.

MARLIN L. LAVOIE,
Petitioner/Defendant-Appellant,

SCWC-23-0000296

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-23-0000296; CASE NO. 2CPC-22-0000737)

AUGUST 13, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY EDDINS, J.

This case involves an expert fees challenge and a sentencing challenge.

Marlin Lavoie, armed with a rifle, shot his partner Malia Kahalewai in the chest. She died.

A jury found Lavoie guilty as charged of murder and firearms-related offenses. The court sentenced Lavoie to life

imprisonment with the possibility of parole and ran the gun charges consecutively.  Lavoie successfully appealed.  This court remanded for retrial.  State v. Lavoie, 145 Hawai'i 409, 434, 453 P.3d 229, 254 (2019).

There was no trial.  Per a plea agreement, Lavoie pled guilty to three counts: manslaughter, use of a firearm in a separate felony, and felon in possession of a firearm.  The State and Lavoie stipulated to using the presentence diagnosis and report (PSR) from the first trial.  That report detailed his bipolar disorder, court-ordered mental health evaluations, and social history.

Lavoie requested $8,767 to hire an expert to opine on his dangerousness for sentencing purposes.  This assessment, Lavoie said, was necessary to supplement the PSR and enhance his position in future parole board hearings.  The court found the request exorbitant and unnecessary because the defense's chosen expert had already assessed Lavoie's mental health.

Circuit Court of the Second Circuit Judge Peter T. Cahill sentenced Lavoie to forty years imprisonment.  Lavoie received twenty years for manslaughter, twenty years for use of a firearm in the commission of a separate felony, and ten years for felon-in-possession.  The twenty-year terms ran consecutively.  The felon-in-possession term ran concurrent with the two consecutive sentences.

On appeal, Lavoie argues that the circuit court erred in denying his expert fees, and erred in sentencing him more severely after his appeal. He also generally challenges his sentence, including an argument that the court did not sufficiently explain why it imposed consecutive sentences.

We affirm the circuit court's denial of Lavoie's fees request, and we reject Lavoie's sentencing challenge.

Upon a proper showing, expert fees for an indigent defendant may be "necessary for an adequate defense" for trial preparation, trial testimony, and extended term sentencing proceedings. But we hold that courts are not typically required to award expert fees for regular sentencing. Because the State sought regular sentencing, the circuit court did not abuse its discretion in holding that Lavoie was not entitled to court funds for an expert.

We also hold that per Hawai'i Revised Statutes (HRS) § 706-609 (1993), Lavoie's forty-year sentence was not "more severe" than his pre-remand sentence to life with the possibility of parole. This court adopts an aggregate approach, comparing the total prison terms from the first and second sentencing. Because forty years is shorter than life with the possibility of parole, Lavoie's second sentence was not "more severe" per HRS § 706-609.

I.

Lavoie and Kahalewai had four children together.  They lived on Moloka'i.  In March 2013, Kahalewai left Lavoie.  She then stayed at several different friends' places.

Weeks later Lavoie confronted Kahalewai at her temporary residence, a friend's apartment.  They argued inside the residence, then moved outside to the apartment's lanai.  Lavoie asked Kahalewai to leave with him, but she refused.  She then sat side-by-side with her friend on a loveseat on the lanai.  Next to Kahalewai, the friend sat with her three-year old daughter.  Another friend stood nearby, and several other friends were inside with their children.

 After more attempts to get Kahalewai to leave with him, Lavoie went to his car.  He returned with a .30-06 rifle.  Standing a few feet from Kahalewai, he pointed the rifle at her chest.  "You like leave me," he said.  Then he shot Kahalewai.  She died almost immediately.  Lavoie left.  The next morning, police arrested him.

Lavoie purchased the rifle over two years before the homicide.  At that time, he had two prior felonies (burglary in the first degree, HRS § 708-810 (1993), and robbery in the second degree, HRS § 708-841 (Supp. 2006)) and a misdemeanor (assault in the third degree, HRS § 707-712 (1993)).  In 1998,

4

he had broken into a neighbor's home, repeatedly punched the neighbor in the face, and stole her purse.

At trial, Lavoie unsuccessfully argued that he suffered from bipolar disorder and acted under extreme mental and distress (EMED). See HRS § 707-702(2) (Supp. 2006); Lavoie, 145 Hawai'i at 430, 453 P.3d at 250. A jury found him guilty as charged of murder in the second degree, HRS § 707-701.5 (1993); use of a firearm in the commission of a separate felony, HRS § 134-21(a) (2011); felon-in-possession, HRS § 134-7(b) and (h) (2011); and place to keep, HRS § 134-23(a) (2011). Id. at 420, 453 P.3d at 240.

In August 2015, Circuit Court of the Second Circuit Judge Joseph E. Cardoza sentenced Lavoie to life imprisonment with the possibility of parole for second degree murder. The court also sentenced Lavoie to twenty years for carrying or use of a firearm in the commission of a separate felony, and ten years each for the other two firearms offenses. The two ten-year firearms sentences ran consecutively to each other and consecutively to the life sentence. Thus, in total, Lavoie was sentenced to life imprisonment plus twenty years. For the purposes of this opinion, we refer to this initial sentence as a life sentence with the possibility of parole.

Lavoie appealed. This court held that the circuit court erred by admitting prior acts of abuse and erred by not

submitting a merger instruction to the jury for the felon in possession and place to keep charges. Lavoie, 145 Hawai'i at 412, 434, 453 P.3d at 232, 254. The court remanded for a new trial. Id.

On remand, per a plea agreement, Lavoie pled guilty to manslaughter (HRS § 707-702(2)), use of a firearm in commission of a felony (HRS § 134-21(a)), and felon-in-possession (HRS § 134-7(b) and (h)). The plea deal restricted the State's ability to seek extended terms of imprisonment, but did not prevent the State from seeking consecutive terms.

In July 2022, before sentencing, Lavoie requested $8,767 for an expert, Dr. Marvin Acklin. He wanted the forensic psychologist to travel from O'ahu to Maui to conduct a dangerousness assessment, prepare a report, and testify at sentencing. The defense had previously hired Dr. Acklin in 2015 with court funds before trial to evaluate Lavoie for fitness, penal responsibility, and his "past and current mental and emotional functioning." The August 2022 PSR included Dr. Acklin's May 2015 psychological evaluation on these issues.

Dr. Acklin testified for the defense at the 2015 trial. Lavoie, 145 Hawai'i at 417-18, 453 P.3d at 237-38. He detailed Lavoie's psychological history and bipolar disorder diagnosis. Id. And he opined that extreme mental and emotional distress induced Lavoie to kill Kahalewai. Id.

Judge Cahill denied the defense's request, but authorized $1,000 for Dr. Acklin's services.

Then, before sentencing, this court published State v. Obrero, 151 Hawai'i 472, 517 P.3d 755 (2022). Because a grand jury did not indict Lavoie for murder and the other charges, Lavoie moved to dismiss. The court dismissed his case without prejudice. The now-dismissed docket included the entire trial record and post-remand plea agreement and expert fees request. The State promptly filed a new indictment (a new docket). Under the same plea deal as before, Lavoie again pled guilty.

Judge Cahill sentenced Lavoie to an aggregate forty-year term of imprisonment with credit for time served (almost ten years). The court imposed consecutive sentences for two of the three charges: manslaughter (twenty years), and commission of a felony with a firearm (twenty years). The third charge, felon-in-possession (ten years), ran concurrently with the other charges.

Lavoie appealed. First, he argued that the circuit court violated his due process rights by awarding only some funds to hire an expert to write a report and testify about Lavoie's future dangerousness. Second, he claimed that the circuit court abused its sentencing discretion because it (1) inadequately explained its rationale for consecutive sentences; (2) ignored

7

EMED as a mitigating factor; and (3) sentenced Lavoie to a disparate sentence compared to other similar cases.

In a summary disposition order, the Intermediate Court of Appeals only addressed the sentencing challenge. It affirmed the circuit court.

The ICA declined to address the expert costs issue on the merits. Lavoie failed to preserve the issue for appeal, the ICA believed. Because the court granted the defense's motion and allowed $1,000 (of the $8,767 requested) for expert fees in the original docket (now dismissed), the ICA concluded that Lavoie couldn't appeal the fees issue based on the present record (the reindictment docket post-Obrero). The motion for costs was in the now-dismissed docket, and he had not renewed his request in the current docket. Thus, the ICA held, Lavoie waived the expert fees issue.

We affirm the ICA in part and reverse in part.

The ICA properly resolved the sentencing issues. But we reject the ICA's holding that Lavoie failed to preserve his expert fees argument for appeal.

Lavoie's case spanned two different circuit court dockets. Both the circuit court and the parties treated the two records as one. Also, the ICA allowed Lavoie to supplement the appellate record with his presentence report and fee motion hearing transcript from the other record.

8

Lavoie preserved his issue. This court's access to justice principles promote a merits-based approach to resolving a party's claims. See JK v. DK, 153 Hawai'i 268, 274, 533 P.3d 1215, 1221 (2023). So we address Lavoie's expert fees argument.

HRS § 802-7 (1993) provides for expert fees and costs that are "necessary for an adequate defense."

Criminal cases progress in stages. First, in the pretrial stage, an expert may help evaluate evidence, provide scientific or technical analysis, and advise on defense strategy. Experts also sometimes testify at pretrial hearings. Next, at trial and during HRS § 706-662 (Supp. 2007) extended term sentencing, an expert may present testimony to assist the court and jury. Regular sentencing, though, lacks the adversarial, fact-intensive qualities of trial and extended term sentencing. See State v. Nobriga, 56 Haw. 75, 77, 527 P.2d 1269, 1271 (1974) (trial, unlike sentencing, is adversarial and involves a different inquiry); HRS § 706-664 (Supp. 2008) (the right to a jury trial for extended term sentencing).

While exceptional circumstances may justify an expert for regular sentencing, we hold that HRS § 802-7 funding for a court-appointed sentencing expert is generally only "necessary for an adequate defense" when the State seeks an extended term sentence. Here, because Lavoie's plea deal prohibited the State

9

from seeking extended term sentencing, the circuit court did not abuse its discretion in denying Lavoie's request.

We further hold that Lavoie's sentence was not "more severe" under HRS § 706-609 than his pre-appeal sentence. The aggregate approach adopted by most jurisdictions sensibly solves the "less than" or "greater than" equation between forty years and life without the possibility of parole. The aggregate method compares the total prison term imposed in the first sentence with the total term later imposed.

Because Lavoie's initial sentence (life with the possibility of parole) decreased to forty years, the circuit court properly sentenced him.

## II.

### A. Procedural technicalities do not foreclose Lavoie's expert fees arguments

First, we address Lavoie's expert fees argument.

The ICA ruled that Lavoie neglected to preserve that argument. Lavoie requested funds for an expert in the original case, the ICA noted, but the circuit court dismissed that case. Becuase Lavoie did not re-request funds for the dangerousness assessment after re-indictment, the ICA refused to let him challenge the expert fees issue.

We disagree. Not only does this court prefer that courts decide cases on the merits, where possible, Lavoie preserved his

issue.  JK, 153 Hawai'i at 274, 533 P.3d at 1221.  The circuit court and ICA's treatment of the record suggest that we reach the merits.

Appellate courts may consider issues supported by documents from a related proceeding once the record on appeal is properly supplemented.  See State v. Apao, 95 Hawai'i 440, 442, 447, 24 P.3d 32, 34, 39 (2001) (if the record is properly supplemented, the court has the "basis upon which to address the merits of the claim"); State v. Hoang, 93 Hawai'i 333, 335, 3 P.3d 499, 501 (2000).

Here, to support his appeal of the expert fees denial, Lavoie asked the ICA to supplement the record on appeal with the PSR and hearing transcript from the pre-dismissal trial record.  The ICA granted his request.  Those materials show that Lavoie clearly requested HRS § 802-7 fees and costs.  Because Lavoie properly supplemented the record on appeal, we resolve his point of error on the merits.  See Apao, 95 Hawai'i at 447, 24 P.3d at 39.

Courts may also take judicial notice of related proceedings and consider more than one record when a defendant is re-tried or re-sentenced.  See State v. Akana, 68 Haw. 164, 165, 706 P.2d 1300, 1302 (1985) ("This court has validated the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same.").  The

11

circuit court did. It considered both post-remand trial records when it sentenced Lavoie.

> I did read -- before we were going to start the trial in May of last year, I read all of the transcripts because they were all available because the case went up on appeal so it wasn't a question that I had to order anything. I read all the transcripts. I read all the testimony. I went through even the expert reports that had been filed in the prior case and in this case looked at all of it and I said all right, well, this will be up to the jury to decide.

(Emphasis added.)

Had it not, the "new" case's records would be slim and inconsequential. After all, the PSR was filed in the pre-dismissal trial record.

The circuit court also acknowledged that expert fees issues raised in the initial record were appealable:

> I agree with you, [counsel], in large measure with the mental health issues. Obviously there was a question here because the case came back and if it went to trial, that would have been -- let's make no mistake about it. That was the heart of this case about Mr. Lavoie's prior history, what was happening that day both earlier and at the moments up to it.

> Having said that [Lavoie has mental health issues], though -- and you had requested and a big part of any appeal that you might want to file if you believe that's appropriate is about the dangerousness. I have to tell you, I really have a lot of doubts about experts being able to tell you about what people's future behaviors are going to be.

Thus, the circuit court's treatment of the records as one record urges a holding on the merits of the expert fees issue.

This case involves multiple dockets over nearly a decade and a published opinion by this court. There was no retrial after we remanded. Lavoie and the prosecution made a deal.

12

That plea agreement was interrupted by a post-Obrero dismissal. The case quickly resurfaced via a new indictment and through a new docket. Then Lavoie and the State agreed to the same plea agreement.

The circuit court considered the twisty record as one. The ICA too. It allowed Lavoie to supplement the record on appeal with documents relating to the expert fees issues. To narrowly exclude this point of error due to the dismissal and re-indictment contradicts our preference to decide issues on the merits when fairly presented. See Dean v. Dep't of Educ., 154 Hawai'i 298, 302, 550 P.3d 1156, 1160 (2024); Coon v. City & Cnty. of Honolulu, 98 Hawai'i 233, 254, 47 P.3d 348, 369 (2002).

Thus, we look at Lavoie's expert fees issue.

## B.    HRS § 802-7 expert fees are generally unavailable for regular sentencing

We hold that expert fees are generally not necessary for an adequate defense for regular sentencing purposes.

In July 2022, before sentencing, Lavoie moved for fees and costs. He identified a psychologist who he wanted to conduct a dangerousness assessment. Lavoie said he needed an updated dangerousness assessment by Dr. Acklin to supplement his PSR. Lavoie maintained that the court would benefit from an updated assessment. The court's decision to sentence Lavoie to concurrent or consecutive terms, he said, would depend on

13

whether it considered him a potential danger to the community. He also felt that the Hawai'i Paroling Authority would later find the expert assessment useful when it considered parole.

The court denied Lavoie's request for $8,767, but authorized $1,000 for Dr. Acklin's services. The court considered the requested amount "exorbitant" partly because Dr. Acklin's opinion already appeared in Lavoie's PSR. "I don't see," the court said, "how spending $8,700 is going to deal with this dangerousness issue. Clearly the defendant, Mr. Lavoie . . . is not a danger to the victim. He killed her." The court concluded, "I think that's exorbitant, especially given the fact that he's already examined this particular person, he's testified, he's reached his opinions, which were in effect the same opinion as you want him to reach now."

HRS § 802-7 covers funding for indigent defendants. Courts may award fees for transcripts, witnesses, and expert services to defendants who show financial and legal necessity:

> The court may, upon a satisfactory showing that a criminal defendant is unable to pay for transcripts or witness fees and transportation, or for investigatory, expert or other services, and upon a finding that the same are necessary for an adequate defense, direct that such expenses be paid from available court funds or waived, . . .

HRS § 802-7 (emphases added).

Trial courts have considerable discretion to provide (or not) "court funds" for HRS § 802-7-related services. See State v. Hoopii, 68 Haw. 246, 248-49, 710 P.2d 1193, 1195 (1985) (a

14

decision that an expert witness is necessary for an adequate defense "cannot be overturned absent an abuse of discretion"); State v. Apelt, 861 P.2d 654, 660 (Ariz. 1993) ("Whether a defendant makes an adequate showing of reasonable necessity is a decision generally left to the discretion of the trial judge."); State v. Tibbetts, 749 N.E.2d 226, 240 (Ohio 2001) ("The trial court uses its sound discretion in determining whether a defendant has made a particularized showing of the need for state-funded expert assistance.").

Lavoie requested funds for a sentencing-related expert to supplement his 2022 PSR. HRS § 802-7, though, only provides for expert fees "necessary for an adequate defense." We hold that this statute primarily addresses funds for experts relating to pretrial preparation, trial, and trial-like extended term sentencing proceedings if the defendant is indigent, and the expert services are "necessary" to the defense. See Hoopii, 68 Haw. at 248-49, 710 P.2d at 1195. For regular sentencing hearings, though, expert funds are not generally necessary for an adequate defense.

Ake affirmed the principle that an indigent defendant must have a fair opportunity to present a defense in the expert fees context. Ake v. Oklahoma, 470 U.S. 68, 76 (1985) ("This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it

15

must take steps to assure that the defendant has a fair opportunity to present his defense."). Ake held that because a capital defendant's sanity was apt to be a "significant factor" to the defense, and because, if convicted, a defendant's future dangerousness would be a "significant factor" during the trial's death penalty phase, the defendant was entitled to a court-appointed psychiatrist on the dangerousness issue. Id. at 86-87.

We hold that generally, regular sentencing does not require court funds for an expert.

Trial and sentencing are different. By nature, trial is adversarial. Both sides spar over the key facts and apply those facts to the law. Sentencing requires far less fact-finding. And involves far more discretion. As this court put it years ago:

> What should be borne in mind is that a clear distinction exists between the adversary proceeding in court and the sentencing process. During the latter, the presiding judge is no longer dealing with the process of determining factual issues, that is, the guilt or innocence of the defendant, but rather must concern himself with "imposing a fair, proper and just sentence."

Nobriga, 56 Haw. at 77, 527 P.2d at 1271 (emphasis added).

Unless extended term sentencing under HRS § 706-664 is in play, the fact-finding associated with adversarial proceedings is mostly missing. Unlike regular sentencing procedures, when

16

the prosecution seeks an extended term sentence, a defendant has the right to "offer evidence upon the issue before a jury":

> Subject to the provisions of section 706-604, the defendant <u>shall have the right to hear and controvert the evidence against the defendant and to offer evidence upon the issue before a jury</u>; provided that the defendant may waive the right to a jury determination under this subsection, in which case the determination shall be made by the court.

HRS § 706-664 (emphasis added); <u>see</u> <u>State v. Maugaotega</u>, 115 Hawai'i 432, 446-47, 168 P.3d 562, 576-77 (2007).

Given the right to a jury, extended term sentencing hearings more closely resemble the "defense" contemplated in HRS § 802-7. <u>See</u> <u>Nobriga</u>, 56 Haw. at 77, 527 P.2d at 1271. So we stress that courts may award expert fees for issues relevant to extended term sentencing, subject to a showing of indigency and necessity. <u>See</u> HRS § 802-7 (the defendant must show that they are unable to pay, and that the funds are "necessary for an adequate defense").

There may be unique circumstances that arise in regular sentencing that render expert fees "necessary for an adequate defense," and where a court may decide in its discretion to grant expert fees. <u>See</u> HRS § 802-7. For example, there may be cases where a victim of domestic violence severely injures or kills their abuser, or where a person with severe post-traumatic stress disorder (PTSD) feels threatened, is unable to regulate their aggressive behavior, and harms someone. Where the

17

domestic violence victim or person suffering from PTSD pleads guilty and forgoes trial, the unique mental or physical conditions under which they committed the crime may warrant expert fees for a psychological assessment related to sentencing. Thus, we stress that courts still have discretion to award expert fees "necessary for an adequate defense" under unique, extenuating circumstances. See HRS § 802-7.

Here, Lavoie was not entitled to expert fees under HRS § 802-7 to supplement his PSR for sentencing and parole purposes. Thus, the circuit court didn't have to direct $1,000 in court funds for expert fees.

A sentencing court has wide-ranging leeway to weigh HRS § 706-606's sentencing factors. See State v. Kong, 131 Hawai'i 94, 101, 315 P.3d 720, 727 (2013) ("The weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case."). Future dangerousness - or a defendant's likelihood to commit more crimes - is an express sentencing factor considered at every sentencing hearing. See HRS § 706-606(2)(c) (1993) (courts must consider how the sentence will "protect the public from further crimes of the defendant").

But as the court observed, a defendant's future dangerousness or risk of recidivism is inherently difficult to

pin down. "I have to tell you," the court explained regarding Lavoie's motion for costs, "I really have a lot of doubts about experts being able to tell you about what people's future behaviors are going to be. . . . Sometimes the best indicator of future conduct is past conduct. And then when the experts come in and they say these things, all they're doing is talking."

Lavoie's circumstances are not so unique as to justify expert fees for regular sentencing purposes. While nearly eight years passed between Dr. Acklin's May 2015 evaluation and Lavoie's March 2023 post-plea sentencing, time alone does not justify expert fees for sentencing purposes. Simply because sentencing happens well after the crime does not mean a defendant is entitled to court funds for an expert. We note that neither the State's sentencing memorandum, nor its presentation at sentencing, raised novel or expert-worthy rebuttal arguments regarding consecutive sentencing.

The court's conclusion that Dr. Acklin had little to add regarding Lavoie's dangerousness or mental state ahead of the second sentencing was based on sufficient evidence and, thus, was not an abuse of discretion. See Hoopii, 68 Haw. at 248-49, 710 P.2d at 1195. Dr. Acklin's report largely involved a forensic analysis of documents in the record such as social history reports, and summaries of existing mental health

histories, HRS § 704-404 (1993 & Supp. 2008) panel reports, police reports, and family member testimony. Also, Dr. Acklin had already clinically assessed Lavoie in 2015 and found that Lavoie's loss of control at the time of the offense was attributed to his bipolar disorder diagnosis. Based on this information, the court had a sufficient evidentiary basis to determine that an additional dangerousness assessment was unnecessary.

Thus, we hold that the circuit court did not abuse its discretion when it denied Lavoie's funding request.

## III.

### A. The circuit court was not required to consider EMED as a mitigating factor

Next, we address Lavoie's challenges to his consecutive sentencing and his claim that the court did not properly consider EMED as a mitigating factor.

We hold that the circuit court did not abuse its discretion when it imposed consecutive sentences. The court sufficiently articulated its reasoning regarding its sentence. It also addressed Lavoie's disparate sentencing arguments and acknowledged Lavoie's mental health issues.

When a court imposes consecutive sentences it "must adequately distinguish between the need for consecutive sentences and the sentence a defendant 'would have received

20

under the presumption of concurrent sentencing.'" State v. Bautista, 153 Hawai'i 284, 290, 535 P.3d 1029, 1035 (2023) (quoting Lewi v. State, 145 Hawai'i 333, 351, 452 P.3d 330, 348 (2019)). Bautista held that because the court did not offer a rationale for each consecutive sentence and because it treated three separate incidents as one offense, it failed to properly communicate a "rational basis for each consecutive sentence that it imposed." Id. at 291, 535 P.3d at 1036.

Our review of the record reveals that Judge Cahill thoughtfully and thoroughly assessed each HRS § 706-606 sentencing factor. He also sufficiently explained the "need for the sentence imposed." HRS § 706-606(2). His analysis articulated a rational basis to support the need for consecutive sentences.

That basis included lengthy remarks about "[t]he nature and circumstances of the offense and the history and characteristics of the defendant" and how those HRS § 706-606(1) factors supported consecutive sentencing. The court commented, among other things, that the crimes involved the death of an intimate partner, Lavoie had a felony conviction for a violent crime, used an unlawfully possessed firearm, committed a separate felony by using that firearm to cause Kahalewai's death, killed Kahalewai while she sat next to a woman holding a

child, and traumatized the many women and children who saw his homicidal conduct.

We hold that the court clearly articulated its reasoning for imposing consecutive sentences. See Bautista, 153 Hawai'i at 291, 535 P.3d at 1036.

Lavoie also argues that the sentencing court missed a mitigating factor that it should've expressly addressed – Lavoie's mental health issues and manslaughter's extreme mental or emotional disturbance component. See HRS § 707-702(2). This argument flops.

There is no statutory or constitutional requirement for a sentencing court to dispel possible mitigating factors or defenses. Rather, HRS § 706-606 shapes the broad discretion granted to courts during sentencing. A court is not required to expressly articulate its consideration of mitigating factors. Rather, the broad discretion granted a sentencing court is constrained by HRS § 706-606's factors. State v. Barrios, 139 Hawai'i 321, 328, 389 P.3d 916, 923 (2016).

But in any event, Lavoie's premise is unsupported. The record shows that the court considered Lavoie's mental health issues at sentencing. It was unswayed. Also, the court knew a jury had rejected EMED as a mitigating defense in the first trial. See Lavoie, 145 Hawai'i at 420, 453 P.3d at 240.

22

Last, the circuit court properly addressed Lavoie's argument that the consecutive sentencing imposed is disparate compared to other defendants whose use of a firearm in commission of a separate felony charges ran concurrently with their manslaughter sentences. After stating that it had considered the cases Lavoie had presented to illustrate disparate sentencing, the court specified that "the legislature gave the discretion to the judges to say very simply, there are cases where a sentencing disparity from other similar cases are warranted." The court then said, "this is one of them" and described the four key reasons for disparate, consecutive sentencing: the victim was a spouse, Lavoie was a convicted felon who used a firearm, Lavoie had the opportunity to avoid committing the crime, but failed to avoid doing so, and Lavoie killed Kahalewai while she sat next to a mother holding a child.

We decline to address Lavoie's contention in his cert application that a "harsher" sentence is a "disparate" sentence. As described below, this is a separate inquiry. The disparity inquiry per HRS § 706-606 focuses on disparities "among defendants," not between a single defendant's changed sentence after resentencing. See § 706-606 ("The court, in determining the particular sentence to be imposed, shall consider[] . . . [t]he need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct.").

We hold that the circuit court did not abuse its discretion in sentencing Lavoie.

**B.  Lavoie's sentence was not "more severe" than his pre-appeal sentence under HRS § 706-609**

Last, we address Lavoie's position that his sentence unlawfully increased after this court vacated his conviction. Because his class A use of a firearm in commission of a separate felony (HRS § 134-21(a)) charge shifted - no longer concurrent to the homicide charge (murder), but now consecutive (to manslaughter) – he argues that the court's treatment of that count was "more severe," and therefore unconstitutional.  Lavoie cited State v. Shak, 51 Haw. 626, 627, 466 P.2d 420, 421 (1970) to support his stance.

Lavoie ignores HRS § 706-609.  That law controls.  It prohibits more severe sentencing when a court has previously set aside a conviction or sentence:

> When a conviction or sentence is set aside on direct or collateral attack, the court shall not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence.

HRS § 706-609 uprooted Shak.  Shak adopted North Carolina v. Pearce, 395 U.S. 711, 723 (1969), then the relevant federal precedent regarding resentencing.  Pearce held that the Fourteenth Amendment requires a presumption of vindictiveness

24

when a judge imposes a more severe sentence following an appeal and new trial.  395 U.S. at 726.  To rebut this presumption, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for [the judge] doing so must affirmatively appear," and "[t]hose reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."  Id. at 726.  This presumption aims to reduce the potential chilling effect of more severe re-sentencing following criminal appeals and avoids "unconstitutionally deter[ring] a defendant's exercise of the right to appeal or collateral[] attack [of] his first conviction."  Id. at 725.

The Court later narrowed the presumption of vindictiveness. Alabama v. Smith only requires a court to explain increased sentencing where there is a "reasonable likelihood" of vindictiveness.  490 U.S. 794, 799-800 (1989).

HRS § 706-609, however, is even narrower than Smith – it only examines whether a sentence is "more severe."  HRS § 706-609.

This court has yet to articulate a specific test for what constitutes a "more severe" sentence under HRS § 706-606.

Keawe concentrated on a sentence's total length.  See Keawe v. State, 79 Hawai'i 281, 282, 901 P.2d 481, 482 (1995).  At his

25

first sentencing, the court sentenced Keawe to a total ten-year term of imprisonment.  Id.  His many counts ran concurrently.  Id.  The court later resentenced Keawe to two five year terms that ran consecutively (for a ten-year maximum).  Id. at 283, 901 P.2d at 483.  Keawe said the consecutive five-year terms affected his parole status.  Id. at 289, 901 P.2d at 489.  This court held that "HRS § 706-609 is inapplicable to cases where a new sentence, which is not more severe than a prior sentence, adversely affects a defendant's parole status."  Id. at 290, 901 P.2d at 490.  Thus, because the aggregate length of sentence remained the same (ten years), the court did not defy HRS § 706-609.  See id.

Samonte took a different approach to "severity."  State v. Samonte, 83 Hawai'i 507, 542, 928 P.2d 1, 36 (1996).  After resentencing, this court examined the increased severity of each count rather than the entire term.  Id.  The court initially sentenced Samonte to life imprisonment without the possibility of parole for attempted murder, ten years for felon in possession of a firearm, and ten years for felon in possession of ammunition.  Id.  All terms ran concurrently.  Id.

Samonte won his appeal and received a new trial.  Id.  A jury found him guilty of the same crimes.  Id.  The court sentenced Samonte to life imprisonment without the possibility of parole for first degree attempted murder, twenty years for

26

felon in possession of a firearm, and twenty years for felon in possession of ammunition.  Id.  The extended twenty-year terms also ran concurrently.  Id. at 543, 928 P.2d at 37.

This court affirmed the life sentence without parole, but vacated and remanded Samonte's felon in possession of a firearm and felon in possession of ammunition convictions pursuant to HRS § 706-609.  Id.  The two concurrent twenty-year sentences, compared to the two concurrent ten-year sentences, the court said, were more severe than the initial sentence.  Id.

Jurisdictions take three approaches to determine whether a new sentence is more severe than a defendant's original sentence: the "aggregate approach," "remainder aggregate approach," and "count-by-count approach."  People v. Johnson, 363 P.3d 169, 177 (Col. 2015).

Most jurisdictions apply the aggregate approach.  Id.; see also Wayne R. LaFave et al., Criminal Procedure, 6 Crim. Proc. § 26.8(a) (4th ed.) ("Most courts look primarily to the total prison term, viewing a decreased prison term as a less severe sentence even if accompanied by a longer parole term or higher fine.").  This approach compares the sentences' total imprisonment terms.  Johnson, 363 P.3d at 178.  It "recognizes the fact-intensive analysis in which the trial court must engage when sentencing a defendant on multiple interrelated convictions, and acknowledges the need for the same level of

27

discretion at resentencing as at the original sentencing proceeding." Id. Keawe reflects this approach. 79 Hawai'i at 290, 901 P.2d at 490.

The "remainder aggregate" approach compares the new aggregate sentence with the original aggregate sentence only for the counts that remain after the defendant's successful appeal. Johnson, 363 P.3d at 179; see also U.S. v. Markus, 603 F.2d 409, 413 (2d Cir. 1979)). This approach recognizes that Pearce's presumption of vindictiveness does not apply to counts that have been dismissed; it only compares the sentences for the counts that remain. Id.

Last, "a small minority of jurisdictions have adopted the 'count-by-count' approach, which compares the trial court's original sentence on an individual conviction against the trial court's sentence on that same conviction after appeal and remand, applying the presumption of vindictiveness if there is an increase." Johnson, 363 P.3d at 179. Courts have criticized this approach as less workable due to its "relative imprecision in identifying actual trial court vindictiveness and failure to recognize the 'big picture' in a trial judge's sentencing decisions." State v. Hudson, 748 S.E.2d 910, 914 (Ga. 2013). Samonte examined the treatment of each count at resentencing, so it approximates this approach. See Samonte, 83 Hawai'i at 542, 928 P.2d at 36. While that case's charge-specific assessment

established that the increase from ten to twenty years for Samonte's felon in possession of a firearm and felon in possession of ammunition charges was "more severe," it did not adopt a count-by-count approach to the detriment of the aggregate approach articulated in Keawe. See id.; Keawe, 79 Hawai'i at 290, 901 P.2d at 490.

We clarify our HRS § 706-609 standard and adopt the aggregate approach to assess when a sentence is "more severe." The aggregate approach recognizes the fact-intensive analysis courts engage in when re-sentencing defendants for multiple convictions, and retains its broader discretion at resentencing. See Johnson, 363 P.3d at 178.

Importantly, the aggregate approach does not deter defendants from exercising their right to appeal. See State v. Harrington, 805 N.W.2d 391, 395-96 (Iowa 2011). Rather, it allows courts to shape sentencing to "consider each sentence part of an integrated whole." Id. The aggregate method comports with this court's many pronouncements regarding a sentencing judge's broad discretion. See Barrios, 139 Hawai'i at 328, 389 P.3d at 923.

Under the aggregate approach, Lavoie's second sentence was not more severe. Lavoie acknowledges that the "overall sentence" in this case (forty years) is "less" than the first, pre-remand sentence (life with the possibility of parole). Yet,

29

he argues, the court made the original sentence for the use of a firearm in the commission of a separate felony charge (20 years *concurrent* with the murder sentence) more severe when it sentenced Lavoie to serve 20 years *consecutive* to the manslaughter charge (20 years).  Because we decline to adopt the count-by-count approach, Lavoie's argument lacks merit.  His sentence is not "more severe" because his HRS § 134-21(a) charge was changed from concurrent to consecutive.

We affirm the circuit court's sentence and judgment.

**IV.**

We affirm the ICA's judgment in part, and affirm the Circuit Court of the Second Circuit's March 7, 2023 Judgment, Conviction of Sentence, and Notice of Entry.

Matthew S. Kohm
for petitioner

Chad M. Kumagai
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens



30